18959

J. D. DANIELS and Margaret R. Daniels, Respondents, v. Moseley C. COLEMAN, Appellant.

(169 S. E. (2d) 503)

*William E. Jenkinson, Esq.,* of Kingstree, *for Appellant,*

*Messrs. Connor & Connor,* of Kingstree, *for Respondents,*

September 5, 1969.

Moss, Chief Justice:

This action was instituted by J. D. Daniels and Margaret R. Daniels, the respondents herein, against Moseley C. Coleman, the appellant herein, to recover actual and punitive damages on two causes of action, one based on fraud and deceit, and the other on trespass.

In the first cause of action, based on fraud and deceit, it is alleged that prior to April 19, 1965, an agreement was entered into by and between the respondents and the appellant, whereby they would execute a note in the amount of $20,000.00, secured by a mortgage on a certain tract of land containing 198 acres, in return for certain agreements on the part of the appellant which were to be reduced to writing and signed by him. It is then alleged that the respondents did, on April 19, 1965, sign the aforesaid note and mortgage with the understanding that delivery thereof was not to be made to the appellant until the agreements were signed by him. It is further alleged that on April 26, 1965, the appellant went to the office of the respondents' attorney, in his absence, and by false representations obtained the possession of the said note and mortgage without signing the agreements. It is further alleged that the appellant never had any intention of executing the agreements and his promise to do so was made solely for the purpose of inducing the respondents to execute the aforesaid note and mortgage, and because of this fraud and deceit on the part of the appellant, the respondents were induced to sign a note and mortgage which they would not have otherwise executed, thereby obligating themselves for the payment of the aforesaid sum of money and encumbering their property

therefor. The complaint also charges that the appellant has refused to return the note and mortgage and that as a result thereof they have been put to much trouble and expense in attempting to recover the same. It is also alleged that there was no valid delivery of the note and mortgage and they are void for this reason.

In the second cause of action it is alleged that the respondents are the owners and in possession of a tract of land containing 107 acres and that on April 26, 1965 they specifically forbade the appellant to go upon said premises for any purpose. It is then alleged that on April 27, 1965, that the appellant, against the express direction of said respondents, went upon said premises, thereby committing a willful trespass and damaging the property rights of the respondents.

The answer of the appellant was a general denial of the charges of fraud and deceit and trespass. He further alleged that he had repeatedly offered to return to the attorney for the respondents the said note and morgage referred to in the complaint but he refused to accept the return of same. The answer also tendered the return of the aforesaid documents to the respondents.

This case came on for trial before The Honorable Frank Eppes, Presiding Judge, and a jury, at the November 1967 Term of the Court of Common Pleas for Williamsburg County. The appellant made timely motions for a nonsuit and a directed verdict and such were refused. The jury returned the following verdict:

"We the Jury find the defendant guilty of trespass and fraud and declare the mortgage null and void and of no effect and actual and punitive damages to be—

Trespass—$5,000.00

· Fraud—$17,000.00"

When the verdict above quoted was published, counsel for the appellant objected to the form thereof upon the ground that it was not responsive to the charge of the trial

judge. After further instructions, which will be hereinafter referred to, the jury retired and returned the same verdict as that above quoted. The appellant duly made a motion for judgment *non obstante veredicto,* or in the alternative, for a new trial. These motions were refused and this appeal followed.

It appears from the record that L. M. Rogers was indebted to the appellant in the amount of approximately $77,000.00, represented by his notes and mortgages. L. L. Rogers, the father of L. M. Rogers and of Margaret R. Daniels, had either endorsed or cosigned some of the aforesaid notes and was liable thereon to the extent of approximately $35,000.00. While this liability was outstanding and subsisting, L. L. Rogers, on October 26, 1964, conveyed his farm aggregating 198 acres to the respondents who were his son-in-law and daughter. The consideration for such conveyance was the sum of $5.00, love and affection, and subject to the lien on a mortgage held by Lake City Building and Loan Association on which there was a balance due of $32,000.00. The farm so conveyed, according to the testimony, was worth from $75,000.00 to $100,-000.00.

It is apparent from the record that a suit to set aside the aforesaid conveyance as a fraudulent one was threatened when the appellant discovered that L. L. Rogers had conveyed all of his property to the respondents. It was at this time that the parties to this action, each represented by counsel, commenced negotiations to settle the controversy existing between them so as to prevent the appellant from attempting to set aside the deed of L. L. Rogers to the respondents on the ground that such was a fraudulent conveyance. It was agreed that the respondents would execute a note to the appellant in the amount of $20,000.00, secured by a mortgage on the premises conveyed by L. L. Rogers to them. The appellant contends that he agreed that upon the execution of the aforesaid note and mortgage that he would release L. L. Rogers from his liability on the notes

endorsed or cosigned by him for his son, L. M. Rogers. The respondents contend that in consideration of their executing a note and mortgage hereinabove referred to, that the appellant was to agree that the indebtedness of L. M. Rogers to him would bear interest from date at the rate of 5% per annum, regardless of the interest rate set forth in any instrument evidencing his debt, and further that the appellant would release and discharge L. L. Rogers from any and all liability arising out of his endorsement or cosigning of notes on behalf of his son, L. M. Rogers. The respondents further contend that the appellant was to agree to "take up" the indebtedness of L. M. Rogers to three of his other creditors, the amount thereof aggregating about $25,-000.00.

The attorney for the appellant testified that he, with the appellant, went to the office of the attorney for the respondents early on the morning of April 26, 1965, concerning the settlement. He stated that the note and mortgage had been signed by the respondents and their attorney had also prepared a release for execution by the appellant. He was told that the appellant would not sign such release because "this is not what we agreed on"; and thereupon he submitted a release that he had prepared. The attorney for the respondents looked it over and said, "that was all right", and that he would take the mortgage to Kingstree that morning and have it recorded. The attorney for the appellant said that he would take his release and have it executed so that the transaction could be closed out. It appears from the testimony that later that morning the appellant checked the clerk of court's office in Kingstree and found that the mortgage had not been recorded. After learning this, the appellant returned to the office of the attorney for the respondents and obtained the possession of the note and mortgage and agreement from the secretary in said office, telling her, in effect, that everything was all settled and it was proper for him to take the papers with him. The appellant then returned to the office of the clerk of court

for the purpose of having the mortgage recorded but because the mortgage was not properly witnessed and probated the clerk could not record the same. The appellant then took the note and mortgage and delivered the possession thereof to his attorney, who, on the same day telephoned the attorney for the respondents, advising him where the note and mortgage were and stated that he would deliver such to him or would keep the papers in his own office for him to pick up, at his convenience. This witness also testified that the respondents' attorney stated that he would contact his clients and see what they wanted done and would be back in touch with him. The witness testified that he heard nothing further from the attorney for the respondents until four days later when the present suit was brought. This witness testified that he tendered a return of the note and mortgage by letter and also by the answer of the appellant.

The attorney for the respondents gave his version of what took place on April 26, 1965, when he met with the appellant and his attorney. He stated that since the release prepared by him was not acceptable to the appellant "I told him the whole deal was off and that as far as I was concerned that they could do what they wanted to." He stated that until the release was executed as drawn by him he had no auhority to deliver the note and mortgage. The witness testified that on the same day that he had a meeting with the appellant and his attorney he went by the clerk of court's office in Kingstree and he was there informed that the appellant had been inquiring if the mortgage had been placed on record. He said that he immediately called his secretary and told her under no circumstances was she to let the appellant have the mortgage. It was then that she informed him that the appellant had just left the office with the mortgage.

J. D. Daniels, one of the respondents, testified that he met the appellant as he left the attorney's office with the note and mortgage and his words to the witness were "old

boy, I have got you now, I have got your mortgage and I am going to record it. And I also have my agreement that I am supposed to sign". He testified that the appellant was supposed to sign the written agreement prior to delivery of the note and mortgage to him. This witness testified after he found that the appellant had obtained the possession of the note and mortgage he went back to his school, where he taught, got someone to replace him, and then went to Kingstree where he found that the appellant had attempted to have the mortgage recorded. He testified also to other trips that he had made in connection with this matter and that he had made a long distance call to his attorney. The witness did not testify to any expenditures made by him for a substitute teacher, in taking the trips outlined, or making a long distance telephone call.

It is the position of the appellant that the respondents failed to prove actionable fraud in that there is no evidence that they suffered any injury or pecuniary loss.

The measure of damages for fraud is, as a general rule, the actual pecuniary loss sustained. Thus, as a general rule, one injured by the commission of fraud is entitled to recover such damages in a tort action as will compensate him for the loss or injury actually sustained and place him in the same position that he would have occupied had he not been defrauded. 37 Am. Jur. (2d), Fraud and Deceit, Section 342. The recovery is restricted in all cases to such damages as were the natural and proximate consequences of the fraud and such as can be clearly defined and ascertained. *Thomas v. American Workmen,* 197 S. C. 178, 14 S. E. (2d) 886, 136 A. L. R. 1.

The trial judge held that damage was established as a result of fraud by the fact that the appellant had secured the possession of a promisory note and mortgage signed by the respondents on the theory that damage is inherent in a promissory note which a party had signed and delivered as a result of a fraudulent representation, the damage being the liability on the note. In support of this holding, the trial

judge cites the annotation found in 91 A. L. R. (2d), at page 354, and the cases of *Nipper v. Griffin Mercantile Co.,* 31 Ga. App. 211, 120 S. E. 439, and *Planters Bank & Trust Company v. Yelverton,* 185 N. C. 314, 117 S. E. 299. The authorities cited do not, in our opinion, support the conclusion reached by the trial judge. A quotation of what was said in the annotation demonstrates that it is inapplicable to the factual situation with which we are concerned. We quote from the annotation the following:

"On the theory that damage is inherent in a promisssory note which a party has signed and delivered as a result of a fraudulent representation, some courts have taken the view that a showing that a defendant's execution and delivery of his promissory note was induced by fraudulent representations of a material fact meets the requirement of the rule that damage must be shown in order to establish fraud *as a defense to an action on a contract.*" (Emphasis added.) The trial judge failed to take into consideration the distinction between the cases where fraud is set up as a defense and those where fraud is the basis for the cause of action. In the former, damage is inherent because if the defendant is denied his defense judgment can go against him. Where the defrauded party is plaintiff, and the defendant has taken no steps to negotiate the note, the plaintiff has suffered no loss on account of his possession of it and there is no damage. The annotation relied upon by the trial judge discusses only the question of whether it is necessary to show damages to establish fraud as a defense to an action on a promissory note obtained by fraud. The annotation is confined to cases wherein fraud was asserted as an affirmative defense relied upon solely to vitiate the contract sued on. The foregoing distinction is succinctly stated in 37 C. J. S. Fraud § 103, at page 408, as follows:

"The party seeking damages or relief on the ground of a false representation must show that he has been damaged or prejudiced because of it. Where fraud is merely set up as a defense and compensation by way of damages or other

relief is not sought, it has been held that damage need not be proved."

In the instant case, the respondents assert fraud and deceit as the basis of their cause of action. We have held that an action based upon fraud and deceit must be founded on proof of legal injury and actual damage and the two elements must concur. *Davis v. Southern Life Ins. Co.,* 249 S. C. 194, 153 S. E. (2d) 399. The evidence is conclusive that the note and mortgage, the possession of which was alleged to have been obtained by fraud and deceit, have not been hypothecated nor have the same passed into the hands of a bona fide purchaser nor has the appellant sought to recover upon the said note. In addition thereto, the note and mortgage have been tendered to the respondents and they have refused such tender. It is our view that the respondents have sustained no actual pecuniary loss.

The respondents take the position that they have been damaged because they incurred expenses for making a telephone call and necessary automobile trips. Such expenses cannot be classified as damages in a legal sense and are not recoverable in a fraud and deceit action. The case of *Rimer v. State Farm Mut. Auto Ins. Co.,* 248 S. C. 18, 148 S. E. (2d) 742, was one asserting a cause of action for wrongful conversion of the plaintiff's property. The plaintiff alleged that because of such conversion he had been required to devote his time and attention to the defense of his rights and had been put to the expense of employing counsel to represent him. Upon motion of the defendant, this court held that such allegations should have been stricken, saying, "Where the rights, or asserted rights, of the parties are in conflict, it is inevitable that each party desiring to protect his rights must give time and attention to that end. To do so is not generally an element of damage, though it may be in some situations where loss of earnings is involved, which is not the case here. Nor do recoverable damages include the expense of employing counsel, except when so provided by the contract or statute, which is not the case

here." In *Aaron v. Hampton Motors, Inc.,* 240 S. C. 26, 124 S. E. (2d) 585, a fraud and deceit action, we held that inconvenience was not a proper element of damage.

It is our conclusion that the evidence failed to show that the respondents suffered any pecuniary loss or damage and cannot recover in this action for fraud and deceit. In contradistinction with trespass and other direct injuries for which the complainant is awarded nominal damages if he should fail to plead and prove actual damage, deceit belongs to that class of tort of which pecuniary loss generally constitutes part of the cause of action. If the respondents suffered no actual damage from the fraud, there is no cause of action and they cannot recover even nominal damages. 37 Am. Jur. (2d), Fraud and Deceit, Sections 283 and 346. It is our conclusion that the trial judge was in error in refusing the motion of the appellant for a directed verdict as to the first cause of action on the ground that the respondents had suffered no legal injury or damage thereby.

The appellant charges the trial judge with error in refusing to order a directed verdict or judgment *non obstante veredicto,* as to the second cause of action, on the ground that the trespass alleged was not committed upon premises in the actual or constructive possession of the respondents.

It is admitted that the respondents had title to the premises in question by virtue of a conveyance to them by L. L. Rogers on October 26, 1964. L. L. Rogers and his wife had lived on this farm for many years and the respondents agreed that they were to occupy the residence thereon for the rest of their lives. J. D. Daniels testified that after he and his wife acquired title to the premises that they farmed the land. He stated that on April 26, 1965, he forbade the appellant to go upon said premises for any purpose. This was denied by the appellant and in his testimony he said that on April 27, 1965, he did go upon the premises and into the residence occupied by the said L. L. Rogers for the purpose of delivering a message which was to be relayed to L. M. Rogers, a son of L. L. Rogers. The appellant said

that when he arrived upon the premises Mrs. L. L. Rogers invited him in and that he talked to L. L. Rogers about one or two minutes, and there was nothing unpleasant about the visit. Mrs. Rogers testified that she did not invite the appellant into her home and asked him not to go in and upset L. L. Rogers. There is testimony that the visit did upset the said L. L. Rogers and it was necessary for a physician to attend him.

The gist of an action for trespass on realty is the injury to the possessory right, and the general rule is that the action may be based upon either actual or constructive possession. Where no actual occupancy exists, it has been held that by showing title in himself the owner may maintain the action, because the title to premises draws after it possession, and this in our cases has been called constructive possession. *Littleton v. Roberts,* 181 S. C. 303, 187 S. E. 349; *Lane v. Mims,* 221 S. C. 236, 70 S. E. (2d) 244. The action will not lie unless the plaintiff had either actual or constructive possession at the time of the alleged trespass.

It is the position of the appellant that the actual possession of the premises here is in L. L. Rogers and this would bar the respondents from maintaining a trespass action based on constructive possession.

As is heretofore stated, L. L. Rogers conveyed the land in question to the respondents for a consideration of $5.00, love and affection, and subject to the lien of the mortgage on which there was a balance due of $32,000.00. The farm so conveyed admittedly was worth from $75,000.00 to $100,000.00. One of the respondents testified that the aforesaid conveyance was made with the undertsanding and agreement that L. L. Rogers and his wife would have the rigth to retain the residence upon the premises conveyed as their home as long as either of them lived. It follows that L. L. Rogers and his wife were in possession of and occupied the residence as a matter of right. The respondents sought recovery in the trespass ac-

tion for an invasion of the home occupied and possessed by L. L. Rogers and his wife. Under the evedence there was no injury to any possessory right of the respondents and it follows that they had no cause of action for trespass.

In 52 Am. Jur., Trespass, Section 27, at page 856, it is said:

"The constructive possession which the legal title draws to itself where the property is not in the actual possession of anyone, or where the person in actual possession is the mere agent or representative of the owner of the legal title, is sufficient to enable the owner to maintain the action. * * * Legal title does not draw after it possession of the real property actually occupied by another so as to enable the owner to maintain trespass *quare clausum fregit*. * * * "

Constructive possession is displaced by actual possession. This court said in *Littleton v. Roberts,* 181 S. C. 303, 187 S. E. 349:

" * * * it would be 'a solecism to say that one can have a constructive possession of that which is in the actual possession of another.' In this contest between actual and constructive possession the latter has always been made to yield, or as was said in the recent case of *McColman v. Wilkes* (3 Strob., 465, 51 Am. Dec., 637, 'it is always displaced by any actual possession,' and in the case of *Davis v. Clancy & Johnson,* 3 McCord 422, and *Pearson v. Dansby & Nelson* [2 Hill 466], already referred to for other purposes, the same principle is fully maintained."

In the cases of *Cannon v. Hatcher,* 1 Hill 260; 19 S. C. L. 262 and *Dial v. Gardner,* 104 S. C. 456, 89 S. E. 396, this court announced the rule that in case of injuries to leased premises which are in the possession of the tenant the landlord cannot maintain an action for damages for an act which affects merely the possession. The rationale of the aforesaid rule is applicable to the facts here presented. It is perfectly clear from this record that no rights of the

respondents have been invaded and it follows that an action of trespass will not lie on the part of one whose rights have not been invaded.

It is contended by the respondents that the deed of conveyance did not reserve any rights of occupancy or possession to L. L. Rogers and his wife and such could not be created by an agreement other than one in writing without violating the Statute of Frauds. Since there has been full performance by L. L. Rogers, the Statute of Frauds has no application.

We conclude that the trial judge was in error in refusing to direct a verdict in favor of the appellant on the trespass cause of action.

The next question posed by the appellant is whether the verdict hereinabove quoted was improper because of the failure of the jury to separately state actual and punitive damages as it was instructed to do by the trial judge. Since we have concluded that the appellant was entitled to a directed verdict as to both causes of action, it becomes unnecessary for us to consider this question.

The judgment of the lower court is reversed and the case remanded thereto for entry of judgment in favor of the appellant as to the causes of action set forth in the complaint.

Reversed and remanded.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.