ATTORNEY GENERAL *vs*. THE DIME SAVINGS BANK OF
NEW YORK, FSB, & others.[1]

Suffolk. May 7, 1992. - July 27, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Attorney General. Mortgage,* Foreclosure. *Trespass. Real Property,* Trespass, Mortgage. *Injunction. Practice, Civil,* Summary process.

The Attorney General was empowered by G. L. c. 12, § 10, to seek a declaratory judgment as to the legality under G. L. c. 184, § 18, of a mortgagee bank's practice of commencing trespass actions to eject mortgagors of real property, and the tenants of mortgagors, who hold over after foreclosure. [287]

A mortgagee who forecloses on real property by power of sale may not bring a trespass action to eject a holdover tenant or mortgagor in actual possession of the premises. [287-291]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 7, 1992.

The case was reported by *Greaney*, J., on a statement of agreed facts.

*Stuart T. Rossman*, Assistant Attorney General, for the Attorney General.

*R. K. Gad, III (Colin J. Zick* with him) for the defendants.

*Joel Feldman, Margaret F. Turner & Kathleen E. Mc-Grath*, for City Life/Vida Urbana & another, amici curiae, submitted a brief.

ABRAMS, J. The Attorney General brought this action for declaratory and injunctive relief against The Dime Savings

[1]The other two defendants, Garden Management Co., Inc., and Dime Real Estate Services-Massachusetts, Inc., "are wholly-owned subsidiaries of Dime Savings Bank which have, on occasion, held title to mortgages and properties for [Dime Savings Bank] and on its behalf."

Bank of New York, FSB (Dime).[2] The dispute arises out of mortgage loans made by Dime in Massachusetts which have resulted in foreclosure. After foreclosing, Dime has brought actions in trespass against foreclosed mortgagors and tenants holding over after notice to quit and has sought and obtained injunctions to eject holdover mortgagors and tenants from the mortgaged properties. The Attorney General seeks a declaration that Dime's practice violates G. L. c. 184, § 18 (1990 ed.). The complaint also asks that we enjoin Dime from pursuing such a course in the future.[3] For the reasons stated, we hold that the procedure employed by Dime in these cases violates G. L. c. 184, § 18. We therefore remand the matter to the county court for entry of a declaration that a mortgagee who forecloses on real property by sale may not bring a trespass action against a holdover tenant or mortgagor in actual possession of the foreclosed premises.[4]

1. *Background.* On April 7, 1992, the Attorney General began this action by filing a complaint in the Supreme Judicial Court for Suffolk County. The complaint invokes the court's equitable and supervisory powers under G. L. c. 214, § 1 (1990 ed.), and G. L. c. 211, § 3 (1990 ed.), respectively, as well as G. L. c. 231A (1990 ed.) (declaratory judgment). The case came before a single justice of the county court on a statement of agreed facts. The stipulations of fact concern a number of individual foreclosures and resulting disposses-

---

[2]As used in this opinion, "Dime" refers to all three defendants.

[3]At oral argument, the assistant attorney general conceded that a declaratory judgment would resolve the matter as effectively as an injunction. We therefore limit ourselves to the question of a declaratory judgment.

[4]Dime maintains, and the Attorney General does not dispute, that a tenant has no more right to possession of property than his landlord. *Allen* v. *Chapman*, 168 Mass. 442, 443 (1897). There is therefore no basis, on this record, for distinguishing holdover tenants of mortgagors from holdover mortgagors. The Attorney General notes that, unlike the situation of the holdover mortgagors, there is nothing in the stipulation of facts to suggest that the holdover tenants were responsible for the defaults. As we hold that Dime must, on the stipulated facts, employ summary process to eject both holdover tenants of mortgagors and holdover mortgagors, we have no occasion to consider any distinction.

sions. After oral argument, the single justice reserved and reported the matter to this court.

The following is a summary of the statement of agreed facts. In each of the cases on which this controversy is founded, Dime held a mortgage of real property as security for an obligation. In each instance, the mortgagor defaulted on the obligation. After default, Dime recorded memoranda of entry, conducted foreclosure sales, and acquired perfected title to the properties by purchasing them at the foreclosure sales. Dime has neither sought nor accepted payments of rent from the occupants, and the Commonwealth stipulates that Dime has done nothing to create new, postforeclosure tenancies between itself and the occupants.

In each of the cases in question, the property was occupied at the time of foreclosure either by the mortgagor or a tenant of the mortgagor.[5] All such occupants initially entered the respective properties lawfully. In each of the cases in which the holdover occupants were tenants of the mortgagor, the creation of the tenancy postdated the grant of the mortgage.

After Dime foreclosed its mortgages, it sent notices to the occupants demanding immediate possession of the properties. In each case, the occupants refused to relinquish possession on receiving notice to do so. Dime responded by bringing actions for trespass against the occupants in Superior Court.[6] In each of these actions, Dime sought preliminary and permanent injunctions ordering the occupants to vacate the mortgaged premises. In some cases, the prayer for preliminary relief was heard on a "short order[ ] of notice." In no case, however, have fewer than thirty days passed between

---

[5]Dime suggests that the Attorney General goes beyond the scope of the statement of agreed facts when he characterizes the properties at issue as residential properties. The Superior Court memoranda of decision supplied by Dime, however, suggest that most, if not all, of the properties in question are indeed residential properties. We therefore assume that some of the foreclosures are of residences.

[6]A small number of these actions were brought in other courts, but this fact is of no importance in our analysis.

the issuance of the demand and the commencement of legal proceedings.

2. *The Attorney General's power under G. L. c. 12, § 10, to bring this action.* We first address Dime's contention that the Attorney General acted beyond his statutory authority in commencing this action. Dime correctly notes that the Attorney General argues in his complaint that the summary process provisions of G. L. c. 239 (1990 ed.), constitute the exclusive remedy for a mortgagee who has foreclosed on mortgaged property by power of sale and who seeks to gain possession of the property. Dime concedes that this claim amounts to an assertion that the Superior Court lacks subject matter jurisdiction to hear Dime's trespass claims. Dime further concedes that such a claim falls within the Attorney General's power, under G. L. c. 12, § 10 (1990 ed.), to "take cognizance of all violations of law or of orders of courts, tribunals or commissions affecting the general welfare of the people." See *Commonwealth* v. *Mass. CRINC*, 392 Mass. 79, 88 (1984) (Attorney General has "broad common law and statutory powers to represent the public interest"). This concession is fatal to Dime's claim.

Dime maintains that the Attorney General has conceded that it has avenues other than summary process available for recovering possession of mortgaged property. Dime contends that this concession subverts the Attorney General's contention that the Superior Court lacks subject matter jurisdiction to hear Dime's claims. The Attorney General, however, has made no such concession. The Attorney General continues to argue that, after foreclosure by sale, a foreclosing mortgagee must employ summary process to dispossess holdover tenants or mortgagors. According to the Attorney General, the commencement of trespass actions to eject holdover tenants and mortgagors violates G. L. c. 184, § 18. See *infra.* Under G. L. c. 12, § 10, the Attorney General is authorized to take note of such statutory violations. See *Commonwealth* v. *Mass. CRINC, supra.*

3. *G. L. c. 184, § 18.* General Laws c. 184, § 18, provides, in pertinent part, that "[n]o person shall attempt to recover

possession of land or tenements in any manner other than through an action brought pursuant to [G. L. c. 239] or such other proceedings authorized by law." Dime argues that a mortgagee's use of a trespass action to recover possession of mortgaged premises is "authorized by law." G. L. c. 184, § 18. Dime further maintains that a court's common law power to enjoin a continuing trespass justifies an injunction ordering holdover mortgagors or their tenants to vacate the premises. Because an action for trespass will not lie in the cases as stated, however, we conclude that the "other proceedings authorized by law" include neither a common law action for trespass nor an injunction based thereon.[7]

It is well settled that "[a]n action of trespass, being a possessory action, cannot be maintained, unless the plaintiff had the actual or constructive possession of the property trespassed upon at the time of the trespass." *Emerson* v. *Thompson*, 2 Pick. 473, 484 (1824). See *New England Box Co.* v. *C & R Constr. Co.*, 313 Mass. 696, 707 (1943); *Milton* v. *Puffer*, 207 Mass. 416, 418 (1911); *Hersey* v. *Chapin*, 162 Mass. 176, 179 (1894); *Abbott* v. *Abbott*, 97 Mass. 136, 140 (1867). Neither party contends that Dime has actual possession of the properties in question. Indeed, the disputed issue in this case is the means by which Dime may gain such possession.

We have not addressed the question whether an owner out of possession has constructive possession sufficient to maintain an action of trespass where actual possession is in another.[8] Courts that have considered the question, however, have concluded that, for the purposes of a trespass action,

---

[7]General Laws c. 266, § 120 (1990 ed.), which governs criminal trespass actions, expressly provides that the statute "shall not apply to tenants or occupants of residential premises who, having rightfully entered said premises at the commencement of the tenancy or occupancy, remain therein after such tenancy or occupancy has been or is alleged to have been terminated." Although this limitation does not govern the present cases as stated, it is nonetheless entirely consistent with the common law of trespass. See *infra*.

[8]This court has held that, where tenants are in actual possession of an owner's property, the owner does not have sufficient possession "through

there can be no constructive possession by an owner of property actually possessed by another. See *Frost* v. *Johnson,* 256 Ala. 383 (1951); *More* v. *Urbano,* 151 Conn. 381 (1964); *McCausland* v. *York,* 133 Me. 115 (1934); *Jaycox* v. *E.M. Harris Bldg. Co.,* 754 S.W.2d 931 (Mo. Ct. App. 1988); *Green* v. *Pettingill,* 47 N.H. 375 (1867); *Daniels* v. *Coleman,* 253 S.C. 218 (1969). The "fiction of 'constructive possession' has no application when another is in actual possession." W. Prosser & W. Keeton, Torts § 13, at 77 n.99 (5th ed. 1984).[9]

Dime argues that the label attached to its action is irrelevant. Dime suggests that it might have brought an action for writ of entry under G. L. c. 237, or a common law action in ejectment. The short answer to this argument is that Dime did not bring such actions. The propriety of such other actions therefore is not before us.

Moreover, Dime's argument is self-contradictory. Although it maintains that the trespass label is insignificant, Dime also contends that a court's traditional power to enjoin a continuing trespass justifies the injunctions it has obtained. However, each case cited by Dime for the proposition that a court will enjoin a continuing trespass involves an owner or owners of real property in actual or constructive possession. See, e.g., *Fenton* v. *Quaboag Country Club, Inc.,* 353 Mass. 534 (1968) (homeowners suffered injuries to person and

his tenants" to maintain an action in trespass against a third party. *Bascom* v. *Dempsey,* 143 Mass. 409, 410 (1887).

[9]Dime's reliance on *Duff* v. *United States Trust Co.,* 327 Mass. 17 (1951), *Northampton Paper Mills* v. *Ames,* 8 Met. 1 (1844), and *Burke* v. *Willard,* 249 Mass. 313 (1924), to the contrary is misplaced. The plaintiffs in *Duff* did not contend that the defendant, which had purchased the properties in question at a foreclosure sale but was not in actual possession, lacked the requisite possession to bring an action in trespass. The issue was therefore not before this court. In *Northampton Paper Mills,* the plaintiffs sought to take actual possession, were physically rebuffed, and subsequently succeeded in gaining possession. *Northampton Paper Mills* v. *Ames, supra* at 7. Moreover, *Northampton Paper Mills* was an action for mesne profits, not for possession. *Id.* at 7-8. The case therefore provides no authority for the proposition that an owner out of possession may bring an action in trespass to eject holdover tenants or mortgagors. Dime's reliance on *Burke* v. *Willard, supra,* is misplaced for the same reasons.

property from golf balls which were hit from adjacent course); *Anntco Corp.* v. *Shrewsbury Bank & Trust Co.*, 353 Mass. 250 (1967) (store owner and commercial landlord aggrieved by overburdening of easement for drainage); *Chesarone* v. *Pinewood Builders, Inc.*, 345 Mass. 236 (1962) (owner of unoccupied land complained of flooding caused by drainage system constructed on neighboring land); *Doody* v. *Spurr*, 315 Mass. 129 (1943) (homeowner sought decree enjoining defendant from parking automobile on and driving over homeowner's property); *Suburban Land Co.* v. *Billerica*, 314 Mass. 184 (1943) (land owner and water company complain of town's construction of water pipes across plaintiffs' property without taking by eminent domain); *Ferrone* v. *Rossi*, 311 Mass. 591 (1942) (owner of vacant land aggrieved by defendant's construction of wall that encroached on landowner's property); *Franchi* v. *Boulger*, 12 Mass. App. Ct. 376 (1981) (trustees of condominium trust object to improperly constructed retaining wall built partially on plaintiffs' property). In all but two of these cases, *Chesarone* and *Ferrone*, the plaintiff was in actual possession of the property in question. In both *Chesarone* v. *Pinewood Builders, Inc.*, *supra*, and *Ferrone* v. *Rossi*, *supra*, the land in question was unoccupied. Thus, none of the cases cited by Dime supports its argument that, in these circumstances, it is entitled to an injunction for continuing trespass.

Dime argues that, even if it could not properly invoke the doctrine of continuing trespass, it could have brought actions in ejectment. Dime contends that it could then invoke the court's general equitable jurisdiction to obtain an injunction. Dime, however, could not get equitable relief at common law.[10] Dime next asks the courts to "fashion a remedy to fit

---

[10]At common law, a bill in equity brought by an owner out of possession to recover possession of his estate would have been dismissed because summary process offers "a plain, adequate, and complete remedy at law." *Weiss* v. *Levy*, 166 Mass. 290, 293 (1896). See *Glickman* v. *Kastel*, 323 Mass. 148, 150 (1948) ("There is not, and has never been, any equity in the bill" requesting an injunction to recover possession of land), and cases cited. Accord *Root* v. *Woolworth*, 150 U.S. 401, 410 (1893) ("It is undoubtedly true that a court of equity will not ordinarily entertain a bill

[Dime's] right" to immediate possession of the properties on which it has foreclosed. There is no need. The Legislature already has fashioned a remedy; it is the summary process statute.[11] See *Serezze* v. *YWCA of W. Mass., Inc.*, 30 Mass. App. Ct. 639, 643-644 (1991) ("[I]t is not a characteristic feature of summary process law that the landlord who seeks possession is without a speedy remedy").[12] See also *Weiss* v. *Levy*, 166 Mass. 290 (1896).

We remand this matter to the Supreme Judicial Court for the county of Suffolk for entry of a declaration that a mortgagee who forecloses on real property by power of sale may not bring a trespass action against a holdover tenant or mortgagor in actual possession of the foreclosed premises.

*So ordered.*

---

solely for the purpose of establishing the title of a party to real estate, or for the recovery of possession thereof, as these objects can generally be accomplished by an action of ejectment at law," citing *Hipp* v. *Babin*, 60 U.S. [19 How.] 271 [1856]); *Rocky Mountain Fuel Co.* v. *New Standard Coal Mining Co.*, 89 F.2d 147 (10th Cir. 1937); *Perry* v. *Warnock*, 246 Ala. 470 (1945); *Welbrot* v. *Levenberg*, 98 Conn. 217 (1922); *Slaughter* v. *Land*, 190 Ga. 491 (1940); *Kertesz* v. *Falgiano*, 140 W. Va. 469 (1954). "[P]laintiffs in such cases [were required to] resort to the ordinary remedies for the recovery of the possession of land." *Glickman* v. *Kastel, supra* at 150.

[11]Dime argues that our holding eviscerates the rule that a court will order specific performance of a purchase and sale agreement for real property. Summary process affords Dime a complete and adequate remedy. There is no analogous remedy for the parties to a purchase and sale agreement. Therefore, Dime's argument fails.

[12]At oral argument, counsel for Dime stated: "It certainly is true that in 98 percent of the summary process cases that are heard in the District Courts in the Commonwealth of Massachusetts . . . , the demandant wins; there's a judgment for possession; there is no appeal; and [the cases] are over within 27.82 days, or whatever it said in that study [submitted by the amici] . . . ."