NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-441                                      Appeals Court


FEDERAL NATIONAL MORTGAGE ASSOCIATION  vs.  HEATHER GORDON
& another.[1]


No. 15-P-441.

Suffolk.     March 8, 2016. - May 17, 2017.

Present:  Hanlon, Sullivan, & Massing, JJ.


Trespass.  Real Property, Trespass, Mortgage, Lease.  Mortgage,
    Foreclosure.  Landlord and Tenant, Control of premises.
    Housing Court, Jurisdiction.  Jurisdiction, Housing Court.
    Summary Process.  Practice, Civil, Summary judgment,
    Summary process.



Civil action commenced in the City of Boston Division of
the Housing Court Department on June 24, 2013.

The case was heard by MaryLou Muirhead, J., on a motion for
summary judgment.


Thomas B. Vawter for the defendants.
Danielle C. Gaudreau (Thomas J. Santolucito also present)
for the plaintiff.


HANLON, J.  The defendants in this trespass action, Heather

Gordon and her granddaughter, Kaire Holman, challenge the

_____

[1] Kaire Holman.

validity of a judgment for possession entered by the Housing Court in favor of the plaintiff, the Federal National Mortgage Association (Fannie Mae), on its motion for summary judgment. Fannie Mae claims ownership, through foreclosure, of the residential condominium at issue, known as Unit 2 at 7 Valentine Street, in the Roxbury section of Boston (the property).  Gordon claims that she and Holman occupy the property pursuant to a lease from Carolyn Grant, who held record title to the condominium as a joint tenant with Gilbert R. Emery prior to the foreclosure.  The lease on which Gordon and Holman rely, however, is dated after both (i) the date of the foreclosure, and (ii) the date on which Fannie Mae began a summary process action against Emery, Grant, and another occupant[2] to obtain possession of the property.

When Fannie Mae learned that Gordon and others had moved into the property as ostensible lessees, Fannie Mae brought a new action (separate from the summary process case) for common law trespass, which is the case now before us.[3]

After review, we reverse the final judgment, holding as follows:  (i) the Housing Court has jurisdiction pursuant to

_____

[2] Jeffrey Grant.  Hereinafter, we refer to Caroline Grant as "Grant," and Caroline and Jeffrey Grant collectively as "the Grants."

[3] Hereinafter, we refer to the purported tenants, individually and collectively, as "Gordon."

G. L. c. 185C, § 3, to hear trespass claims; (ii) the teaching of Attorney Gen. v. Dime Sav. Bank of N.Y., FSB, 413 Mass. 284, 288 (1992) (Dime Savings), with respect to whether G. L. c. 184, § 18, bars trespass actions by postforeclosure owners against tenants with actual possession, applies with equal force in the circumstances of this case; and (iii) the summary judgment record does not establish Fannie Mae's actual or constructive possession of the subject property, a prerequisite for a trespass claim.

Background.  The following facts are taken from the record and, essentially, are undisputed.  In 2007, Emery granted a mortgage on the property to Wells Fargo Bank, N.A. (Wells Fargo) to secure a loan.  On or about August 15, 2007, Emery deeded his interest in the property to himself and Grant as joint tenants with the right of survivorship.

By July, 2010, Emery was in arrears on his loan payments. Acting pursuant to the statutory power of sale contained in its mortgage, Wells Fargo[4] conducted a foreclosure auction on August 27, 2010, at which it submitted the high bid.  Thereafter, Wells Fargo executed an assignment of its bid to Fannie Mae, and executed and recorded a foreclosure deed of the property to Fannie Mae.  Shortly thereafter, Fannie Mae filed a summary

_____

[4] Wells Fargo is not a party to this case.

process action in Boston Housing Court against Emery and the Grants.

Almost two years later, on July 27, 2012, Grant and Gordon executed a document entitled "Residential Lease." The purported lease names Gordon as "Tenant" and Grant as "Landlord" and provides for a three-year rental term beginning on August 1, 2012, and concluding on August 1, 2015, at a rental rate of $1,300 per month.[5] It appears from the record that Gordon began paying rent to Grant in July, 2012.[6] Gordon's affidavit states that the March and April, 2013, rent payments were discounted because Grant was "behind thousands of dollars in her utility bills," which had to be paid before the utilities could be placed in Gordon's name.[7] Gordon's affidavit further states that she was to move into the unit in August of 2012, but that there was a delay in Grant's moving out, and Gordon did not actually

---

[5] The lease also lists three children, including Holman, as having Grant's express permission to occupy the unit as part of the tenancy.

[6] Specifically, Gordon's uncontroverted affidavit states that she paid a total of $3,900 to Grant from July through September, 2012, for first and last month's rent and a security deposit; $1,300 on October 5, 2012, for rent for an unspecified month; $1,300 in rent for January and February, 2013; and $600 "in rent in March and April 2013."

[7] The record is silent as to whether Grant accepted rent after April, 2013; however, it is undisputed that she accepted rent from Gordon for several months after Grant moved out of the property in December, 2012 (see note 6, supra).

move in until December 16, 2012, the same day Grant moved to Florida.

The Housing Court docket indicates that, on or about October 1, 2012 -- after execution of the lease on which Gordon relies, but before Grant left the property -- one or more parties to Fannie Mae's summary process action reported that matter settled, and the Housing Court issued a sixty-day nisi order. The record includes an unsigned "Agreement for Judgment" for possession stating that Emery and the Grants would move out of the property by December 15, 2012, and that no other occupants would reside therein. However, after the report of a settlement to the Housing Court, a disagreement apparently arose between Fannie Mae and the defendants in the summary process action about whether they had actually perfected a deal. Consequently, a stipulation of dismissal was never filed in that matter, and the summary process action retained "active" status on the Housing Court's docket throughout the course of the proceedings in the present case.[8]

---

[8] Although the nisi order in the summary process action stated that all the claims and counterclaims in the action would be dismissed sixty days from the date of the order "in the event the parties fail to file a stipulation of dismissal," the docket of that case, reproduced in the record appendix, does not show that judgment for possession for Fannie Mae was ever entered. Rather, the docket shows active litigation in the matter at least into May of 2013.

Meanwhile, on December 16, 2012, Grant moved out of the property and, on that same date, Gordon moved in.[9]  At some time thereafter, Fannie Mae learned that Gordon had moved in to the property, and, on or about June 24, 2013, Fannie Mae began the instant action in the Boston Housing Court, filing a complaint against Gordon in two counts, for trespass and injunctive relief, respectively.  After amending the complaint to name other occupants as defendants, Fannie Mae then brought a motion for summary judgment on June 27, 2014.

The motion judge allowed the motion on or about October 21, 2014.  In so doing, the judge focused on the question whether Fannie Mae had obtained possession of the property, a prerequisite for maintaining a common-law trespass action.  See Dime Savings, 413 Mass. at 288 ("An action of trespass, being a possessory action, cannot be maintained, unless the plaintiff had the actual or constructive possession of the property trespassed upon at the time of the trespass").  The judge determined that Fannie Mae's constructive possession of the property was established during the period of time, however short, between when Grant moved out of the property and Gordon moved in.

---

[9] There appears to be some dispute about this timing reflected in the record, but, for purposes of this appeal, we view the facts in the light most favorable to the nonmoving party, Gordon.

The judge ordered that "judgment . . . enter for the Plaintiff as prayed for in the complaint."  In a further order dated December 31, 2014, she dismissed Fannie Mae's claim for money damages and ordered that "final judgment for possession shall enter and the execution shall issue in the usual course."[10]

Gordon appeals, arguing that the Housing Court's judgment should be vacated on the following grounds:  (i) the Housing Court lacks subject matter jurisdiction pursuant to G. L. c. 185C, § 3, over a common-law trespass claim; (ii) a trespass claim is unavailable to Fannie Mae here because it is barred by G. L. c. 184, § 18; and (iii) Fannie Mae failed substantively to demonstrate its entitlement to judgment because it did not show that it ever obtained the requisite actual or constructive possession of the property necessary to prevail on a trespass claim.

Discussion.  1.  Jurisdiction of the Housing Court over trespass actions.  We first consider the defendants' claim that the Housing Court is without subject matter jurisdiction to hear Fannie Mae's trespass claim.  Although, as Fannie Mae correctly observes, the subject matter jurisdiction of the Housing Court

---

[10] The Housing Court's final judgment entered on January 7, 2015.  Notwithstanding that this case was not commenced or treated as a summary process action, the judgment issued by the court is entitled "Judgment of Summary Process for Plaintiff." The docket reflects that execution issued as of January 20, 2015, but no copy of the execution appears in the record.

to hear its trespass claim was not raised by the defendants in the proceedings below, a lack of subject matter jurisdiction cannot be waived and must be considered by the court at any time -- even on appeal, and even sua sponte.[11]  See Cohen v. Cohen, 470 Mass. 708, 713 (2015); Abate v. Fremont Inv. & Loan, 470 Mass. 821, 828 (2015).  See also Chestnut-Adams Ltd. Partnership v. Bricklayers & Masons Trust Funds of Boston, 415 Mass. 87, 90 (1993); Worcester Heritage Soc., Inc. v. Trussell, 31 Mass. App. Ct. 343, 347 n.3 (1991) ("Although neither party raises any question concerning the jurisdiction of the Housing Court, we have considered the question, as we must").

The Housing Court's general subject matter jurisdiction is described in G. L. c. 185C, § 3, which has been called "imprecise and more than a little ungainly."  Murphy v. Miller, 75 Mass. App. Ct. 210, 214 (2009).  The statute was inserted into the General Laws by St. 1978, c. 478, § 92, and the Housing Court's jurisdictional reach was greatly expanded through a series of amendments, beginning with St. 1979, c. 72, § 3.  See Tedford v. Massachusetts Hous. Fin. Agency, 390 Mass. 688, 693 n.7 (1984); Patry v. Liberty Mobilhome Sales, Inc., 15 Mass. App. Ct. 701, 704-705 (1983).  Nonetheless, the Housing Court

---

[11] Fannie Mae acknowledges that the claim of a lack of subject matter jurisdiction may be raised for the first time on appeal.

"remains a court of limited jurisdiction with its [primary] expertise in the area of housing." LeBlanc v. Sherwin Williams Co., 406 Mass. 888, 897 (1990).

In its current form, the Housing Court's jurisdiction includes matters brought "under the provisions of common law and of equity and any other general or special law, ordinance, by-law, rule or regulation as is concerned directly or indirectly with the health, safety, or welfare, of any occupant of any place used, or intended for use, as a place of human habitation and the possession, condition, or use of any particular housing accommodations or household goods or services situated therein or furnished in connection there with." G. L. c. 185C, § 3, as appearing in St. 1987, c. 755, § 3.

The Housing Court also has jurisdiction over "all housing problems, including all contract and tort actions which affect the health, safety and welfare of the occupants or owners thereof, arising within and affecting residents in the city of Boston, in the case of that division, . . . and shall also have jurisdiction in equity, concurrent with the divisions of the district court department, the divisions of the probate and family court department, the superior court department, the appeals court, and the supreme judicial court, of all cases and matters so arising." Ibid.

The defendants argue that Fannie Mae's case is not concerned with housing, but rather with the question whether they are trespassers on the property, and, thus, the case falls outside the jurisdiction of the Housing Court. We disagree. The Housing Court's jurisdiction broadly encompasses "all contract and tort actions which affect the health, safety and welfare of the occupants or owners thereof." G. L. c. 185C, § 3. Although there appears to be no appellate authority for the specific proposition that this language includes trespass claims concerning residential real estate (and the parties have cited none), we have no doubt that a trespass on residential land would typically affect the "health, safety and welfare of the occupants or owners thereof." G. L. c. 185C, § 3. The fact that the Housing Court is particularly concerned with claims regarding the physical condition of housing, see Ryan v. Kehoe, 408 Mass. 636, 640 (1990); Murphy, 75 Mass. App. Ct. at 215, does not limit the scope of matters that could affect the health, safety, and welfare of owners and occupants to only those concerning the habitability or safety of the physical premises. The presence of trespassers in residential housing will, in many cases, affect the health, safety, and welfare of an owner or occupant. As we are satisfied that the Housing Court has jurisdiction, we turn to the question whether an

action for trespass is available in the circumstances of this case.

2.  Whether an action against Gordon for trespass was available to Fannie Mae.  Relying on Dime Savings, supra, Gordon argues that G. L. c. 184, § 18, bars Fannie Mae's common-law trespass claim, and requires that the Housing Court's judgment for possession be vacated.  In her view, Fannie Mae's only remedy to evict her is through summary process.[12]

In Dime Savings, the Attorney General brought an action for declaratory and injunctive relief against the Dime Savings Bank of New York, asking the court to enjoin the bank from bringing "actions in trespass against foreclosed mortgagors and tenants holding over after notice to quit" and from seeking "to eject holdover mortgagors and tenants from the mortgaged properties." 413 Mass. at 284-285.  The court concluded that "the procedure employed by Dime in [those] cases violate[d] G. L. c. 184, § 18,

---

[12] The defendants did not raise in the Housing Court their argument that Fannie Mae's trespass action is foreclosed pursuant to G. L. c. 184, § 18.  In Dime Savings, the parties both treated this question as one of "subject matter jurisdiction," and the Supreme Judicial Court had no reason to second-guess that assumption.  See Dime Savings, 413 Mass. at 287.  See also Commonwealth v. DeJesus, 440 Mass. 147, 151 (2003) (questions of subject matter jurisdiction can be raised at any time and are not waived even when not argued below).  In the exercise of our discretion, we shall reach Gordon's argument, as a question of important public interest, even though it may have otherwise been waived.  See Pryor v. Holiday Inns, Inc., 401 Mass. 506, 509-510 (1988); Slawsby v. Slawsby, 33 Mass. App. Ct. 465, 469-470 (1992).

[and] therefore remand[ed] the matter to the county court for entry of a declaration that a mortgagee who forecloses on real property by sale may not bring a trespass action against a holdover tenant or mortgagor in actual possession of the foreclosed premises." Id. at 285.

General Laws c. 184, § 18, as amended by St. 1973, c. 778, § 1, provides that "[n]o person shall attempt to recover possession of land or tenements in any manner other than through an action brought pursuant to chapter two hundred and thirty-nine or such other proceedings authorized by law." In Dime Savings the Supreme Judicial Court determined that a trespass action is not available under the statute's provision for "such other proceedings authorized by law," to a purchaser at a foreclosure sale seeking to gain possession from a mortgagor or its tenants in actual possession of the premises and holding over from before the foreclosure. See Dime Savings, 413 Mass. at 285. See also Deutsche Bank Natl. Trust Co. v. Gabriel, 81 Mass. App. Ct. 564, 565-566 (2012) ("Deutsche Bank, having acquired the property after a foreclosure sale, was both required and entitled to use summary process, G. L. c. 239, § 1, to recover possession from the defendants, who continued to occupy the premises after the foreclosure. . . . Dime Sav[ings], 413 Mass. [at] 291").

Fannie Mae argues, however, that neither G. L. c. 184, § 18, nor the summary process statute, G. L. c. 239, bars its trespass claim. The Supreme Judicial Court addressed this issue in Dime Savings. In holding that the bank's trespass actions should be enjoined pursuant to G. L. c. 184, § 18, the court specifically noted that, "[i]n each of the cases in question, the property was occupied at the time of the foreclosure either by the mortgagor or a tenant of the mortgagor." Dime Savings, 413 Mass. at 286. Moreover, "[a]ll such occupants initially entered the respective properties lawfully." Ibid.

There is no dispute here that Grant, as a joint tenant with Emery, the mortgagor, occupied the property at the time of the foreclosure. Thus, the initial question presented here is whether Dime Savings can be distinguished from the instant case on the ground that Gordon (unlike the tenants in Dime Savings) did not initially enter the subject property "lawfully." See Dilbert v. Hanover Ins. Co., 63 Mass. App. Ct. 327, 333 (2005) ("trespass equates to wrongful entry"). We are persuaded that the holding of Dime Savings also applies on the facts of this case.

In Dime Savings, the court determined that "[t]here is . . . no basis, on this record, for distinguishing holdover tenants of mortgagors from holdover mortgagors." Id. at 285

n.4.[13]  That reasoning is equally applicable here.  We see no principled basis for distinguishing Gordon from the tenants in Dime Savings.  Moreover, to treat Gordon's status in relation to the property as somehow lesser than or different from that held by the holdover tenants in Dime Savings could only be justified by ascribing to Gordon some actual or constructive knowledge about the legal status of Grant's title.  In other words, to treat a purported tenant such as Gordon differently from the bona fide tenants in Dime Savings[14] could only be justified by applying some expectation that residential renters will take steps to determine the validity of their landlord's title prior to entering a lease.  We know of no basis for any such expectation.

Accordingly, we decline to adopt a rule that would distinguish this case from Dime Savings based solely on the

---

[13] In addition, in Dime Savings, the Supreme Judicial Court cited approvingly the Attorney General's argument that "unlike the situation of the holdover mortgagors, there is nothing in the stipulation of facts to suggest that the holdover tenants were responsible for the defaults."  413 Mass. at 285 n.4.  This point is also applicable here.  Like the defendants in Dime Savings, Gordon was not responsible for the defaults on loan obligations that led to the foreclosure.

[14] We use the term "purported" because the question whether Fannie Mae obtained good title as a result of the foreclosure sale and assignment has never been reduced to a judgment against Grant.  See note 8, supra.  In contrast, in Dime Savings there was no question presented as to the validity of the occupants' tenancies.  413 Mass. at 286.

state of the purported landlord's title, or would deem a purported lessee's possession of premises to be "unlawful" in all circumstances where the purported landlord's title is later adjudicated to be lacking. Here, Grant was lawfully occupying the subject property while defending against Fannie Mae's summary process action at the time she entered the purported lease with Gordon. Like the tenants in Dime Savings, Gordon was never a true stranger to the property. Instead, at a minimum, she entered at the invitation of a person with actual possession, who was defending an active eviction case that had yet to conclude with the entry of a judgment for possession for any other party. We note that this situation is easily distinguishable from a case in which a person makes a forced entry into a vacant property and, without permission from any purported owner, takes up residence therein.

We conclude that the Supreme Judicial Court's declaration in Dime Savings that a postforeclosure owner may not bring a trespass action against a holdover tenant who is in actual possession of the premises applies with equal force here, where the purported tenants claim to have leasehold rights arising after a foreclosure, but before a final judgment for possession has entered against the landlord. That, however, does not end our inquiry, as, under Dime Savings, supra, and its construction of G. L. c. 184, § 18, it was open to Fannie Mae to maintain the

trespass action if it could demonstrate that it had obtained at least constructive possession of the premises before Gordon entered.

3. <u>Whether Fannie Mae obtained constructive possession</u>. The motion judge reasoned that, because the foreclosure was effective, Fannie Mae and not Grant held title to the property on the date Grant moved out. As a result, the judge concluded that Fannie Mae obtained constructive possession at the moment Grant vacated the property, making Gordon a trespasser. We disagree.[15] In our view, Fannie Mae did not establish its constructive possession on the summary judgment record before us, and <u>Dime Savings</u> governs this point as well.

Some older cases concerning the tort of trespass assert that a plaintiff's "actual" possession of the subject land prior to the trespass is an elemental requirement. See <u>New England Box Co</u>. v. <u>C & R Constr. Co</u>., 313 Mass. 696, 707 (1943), quoting from <u>Perry</u> v. <u>Weeks</u>, 137 Mass. 584, 587 (1884) ("To support an action of trespass . . . , it is necessary to prove the actual possession of the plaintiff, and an illegal entry by the

---

[15] Assuming a lawful foreclosure (a question we do not decide, see note 14, <u>supra</u>), Grant's ownership interest in the property was terminated and she became a tenant at sufferance, with no legal interest in the property. See <u>Margosian</u> v. <u>Markarian</u>, 288 Mass. 197, 199 (1934). If she held no legal interest in the property, she could not validly convey an interest, by lease or otherwise, to anyone else. However, that alone does not extinguish Grant's possessory interest, a necessary element in Fannie Mae's trespass claim.

defendant"). It is now established, however, that, for the purposes of a trespass claim, "possession does not require that the plaintiff physically occupy the property at the time of the alleged trespass," and a plaintiff with "constructive possession" may maintain a trespass claim "against other parties without [actual] possession at the time of [their] entry." Dilbert v. Hanover Ins. Co., 63 Mass. App. Ct. at 334. See Dime Savings, 413 Mass. at 288, quoting from Emerson v. Thompson, 2 Pick. 473, 484 (1824).

In Dime Savings, as here, neither party contended that the bank had actual possession of the subject property. 413 Mass. at 288. The court considered (and ultimately adopted) the view from several other jurisdictions that "for the purposes of a trespass action, there can be no constructive possession by an owner of property actually possessed by another." Id. at 288-289. Accordingly, here, Fannie Mae's claim required proof that there was a period of time, however brief, when no other person was in actual possession.

For summary judgment purposes in this case, viewing the facts in the light most favorable to the nonmoving party, Grant moved out and Gordon moved into the premises on the same day. See note 9, supra. The motion judge held, as a matter of law, that this constituted a brief period of vacancy, which was sufficient to establish Fannie Mae's constructive possession.

We disagree. Because we are satisfied that, on the summary judgment record presented, Grant's "actual" possession did not necessarily end at the moment she moved out, we reverse. It is undisputed that Grant executed a lease on or about July 27, 2012, which, on its face, entitled Gordon to occupy the premises for a term of three years, beginning on August 1, 2012. Grant's execution of the lease and her surrender of the purportedly leased premises to Gordon pursuant to that lease do not indicate Grant's surrender of possession in relation to others who might claim title. On the contrary, these facts suggest the opposite. Cf. Shoer v. Daffe, 337 Mass. 420, 424 (1958) (letting of premises by adverse possessor, and subsequent possession by succession of tenants under purported leases, did not interrupt adverse possessor's claim as against the record title holder for purposes of the twenty-year prescriptive period). Nor does a gap in time between when Grant vacated and Gordon entered the premises signify that Grant surrendered her actual possession. Cf. ibid., quoting from Wishart v. McKnight, 184 Mass. 283, 285-286 (1903) ("To warrant a finding that there was a continuity of possession, we do not deem it necessary to show by express testimony that the new occupant was personally present upon the premises before the former occupant departed, and that there was a formal manual transfer of possession. . . . There is a fair inference that . . . the[] possession [of the tenant and the

owner] is continuous, or rather, that the possession of the owner is continuous, although the two do not meet personally upon the premises at the end of the term").

The question whether Grant surrendered possession of the property "is to be determined by the intent as expressed by words and acts of all the parties in the light of the circumstances." Net Realty Holding Trust v. Giannini, 13 Mass. App. Ct. 273, 278 (1982), quoting from Tudor Press, Inc. v. University Distrib. Co., 292 Mass. 339, 341 (1935). Indicative of Grant's continuing possession is Gordon's uncontroverted affidavit, which states that, although Grant moved out on December 16, 2012, Grant's name remained on certain utilities for an unspecified period of time after that date, and Gordon paid rent to Grant for several months after that date. Contrast Caruso v. Shelit, 282 Mass. 196, 199 (1933) (surrender by operation of law). The record is silent as to whether Grant acted in any other way that would suggest that she intended to maintain possession of the property (as against anyone but her tenant) after she moved out, such as by making repairs, paying taxes, or paying utility bills. It is undisputed, however, that the summary process case against Grant remained pending with no adjudication of the title as of the date Grant left the property and Gordon moved in. Furthermore, as we have noted, the docket

in that case continues to reflect active litigation as late as May, 2013.

We are satisfied that, on this record, and taking the facts in the light most favorable to the nonmoving party, Fannie Mae has not demonstrated a gap in Grant's possession such that Fannie Mae gained constructive possession of the premises. Thus, under Dime Savings, the summary judgment in favor of Fannie Mae cannot stand.

Judgment reversed.