WESTERN MASSACHUSETTS THEATRES, INC. & another *vs.* LIBERTY MUTUAL INSURANCE COMPANY.

Suffolk.     October 9, 1968. — November 1, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Insurance,* "Crime" insurance, Theatre insurance. *Words,* "Burglarious entry," "Abstraction," "Premises," "Fixtures."

Under a policy insuring the owners and operators of a theatre against "damage to the premises caused . . . by or following burglarious entry into the premises," and defining burglary as "the wrongful abstraction . . . of merchandise, furnishings, fixtures and equipment by any person . . . making felonious entry into the premises," there was a "wrongful abstraction" by youths who made a felonious entry into the premises and "broke into a candy case and ice-cream freezer, taking some of the contents thereof," even if they did not take any of the ice cream or candy away when they left, and therefore there was a "burglarious entry" within the policy [658]; but the physical damage done to the candy case and ice cream freezer and by slashing of a picture screen "affixed to the building," even though the screen was a fixture, and the loss of the ice cream and candy taken, did not constitute "damage to the premises" within the policy, and the insurer was not liable for such physical damage and loss [659].

CONTRACT.   Writ in the Municipal Court of the City of Boston dated January 3, 1967.

The action was heard by *Glynn*, J.

*Robert J. Muldoon, Jr.*, for the plaintiffs.

*John Arthur Johnson* for the defendant.

SPALDING, J.   In this action of contract the plaintiffs seek to recover for damage to property allegedly covered under a policy of insurance issued by the defendant to the plaintiffs.   The case was heard on a case stated.   The judge found for the plaintiffs.   On report to the Appellate Division the finding was vacated and a finding for the defendant was ordered.   The plaintiffs appealed.

During the period here material the plaintiffs were the holders of a policy of insurance entitled "Crime Policy" issued by the defendant.   The plaintiffs owned and operated the Falls Theatre in Chicopee Falls, and the policy covered this theatre, except for Coverages B and C, which were expressly excluded.

On August 27, 1965, two youths of about thirteen years of age entered the Falls Theatre, while it was not open for business, "by forcing a rear exit door, as evidenced by physical damage to the exterior of the premises at the place of entry."   After entering "they broke into a candy case and ice-cream freezer, taking some of the contents thereof."   The theatre "was found littered with candy and ice cream."   They also "slashed the picture screen which is affixed to the building."  [1]   All conditions for recovery under the policy

---

[1] "The charges incurred by the plaintiffs as a result of the damage are as follows:

| | | | | | |
|---|---|---|---|---|---:|
| 1. | New screen | | | | · $675.25 |
| 2. | Installation of new screen | | | | 165.00 |
| 3. | Repair of candy case | | | | 29.50 |
| 4. | Installation of new hasp on ice cream freezer | | | | 4.75 |
| 5. | Repair of panic bolt and bars on exit doors | | | | 44.50 |
| 6. | Cost of candy taken: | | | | |
| | 43 | 5¢ pieces @ | .03 | 1.29 | |
| | 31 | 10¢ " @ | .055 | 1.71 | |
| | 31 | 15¢ " @ | .08 | 2.48 | |
| | 26  12¢ | ice cream @ | .075 | 1.95 | |
| | 48  15¢ | " " @ | .075 | 3.60 | 11.03 |
| 7. | 6 hours extra cleaning @ 1.30 per hour | | · | | 7.80 |
| | TOTAL | | | | $937.83" |

such as notice, proof of loss and payment of premium have been complied with.

The defendant's requests for rulings, which were denied, need not concern us. It was the duty of the judge to order the correct judgment on the case stated; requests for rulings had no standing. *Associates Discount Corp.* v. *Gillineau,* 322 Mass. 490, 491. *Simmons* v. *Cambridge Sav. Bank,* 346 Mass. 327, 329.

The plaintiffs ground their right to recover on Coverage D (2) of the policy under which the defendant undertook to "pay for . . . *damage to the premises caused* by robbery, by safe burglary or *by or following burglarious entry into the premises, or attempt thereat*" (emphasis supplied). Since there was no robbery or safe burglary, the plaintiffs must bring themselves under the italicized portion of Coverage D (2), and show that there was "damage to the premises," which was caused "by or following burglarious entry into the premises." Coverage D (2) has other provisions, but the only one here material is that quoted above.

We first must consider whether the agreed facts show a "burglarious entry," for if there was not such an entry the plaintiffs cannot prevail. Although "burglarious" is not defined in the policy, "burglary" is defined as "the wrongful abstraction . . . of merchandise, furnishings, fixtures and equipment by any person or persons making felonious entry into the premises." The parties appear to agree that "burglarious" should be interpreted in the light of the above definition, with emphasis on the words "wrongful abstraction."

The defendant has not raised the issue whether the wrongful entry was felonious. Rather the defendant contends that there was no "wrongful abstraction" and therefore no "burglarious entry," because the boys may not have taken any of the ice cream or candy when they left. Thus, it is argued, their conduct constituted vandalism but not burglary. We are of opinion that this construction of the facts is too restrictive. "Abstraction" is not a word of settled technical meaning such as "embezzlement" or "larceny."

See *United States* v. *Northway,* 120 U. S. 327, 334; *Williamson* v. *United States,* 332 F. 2d 123, 133 (5th Cir.). It has been defined as a "[t]aking from with intent to injure or defraud." Black's Law Dictionary (4th ed.). The removal of the ice cream from the freezer and the resulting loss to the plaintiffs constituted such a taking, even if the boys did not carry it out of the building. We hold that there was a "burglarious entry" within the meaning of the policy.

We turn now to the question whether the damage to the picture screen, candy, and ice cream comes within the coverage of "damage to the premises" contained in the policy. The term "premises" is defined in the policy to mean "those portions of the interior of any building which are occupied and controlled" by the insured. But this definition does little to resolve the issue whether "premises" refers only to the building itself or includes fixtures, equipment, and merchandise as well.

The word "premises" may have different meanings, depending on the context in which it is used. See *Old South Assn.* v. *Codman,* 211 Mass. 211, 216, and cases cited. The word "as . . . commonly used . . . has reference to lands or buildings regarded as separate units or entities . . . . Except possibly when used in some peculiar context, 'premises' does not include personal property." *Doherty's Case,* 294 Mass. 363, 366–367. Other cases to the same effect are: *Casey* v. *Boston Elev. Ry.* 255 Mass. 33; *Staley* v. *People,* 78 Colo. 67, 70; *Carr* v. *Roger Williams Ins. Co.* 60 N. H. 513 ("[t]he term 'premises' does not include and is never used to designate personal property. It is used, both in law and in common speech, to indicate lands and tenements." P. 520); *Mosley* v. *Vermont Mut. Fire Ins. Co.* 55 Vt. 142, 148–149.

We are mindful that the principal damage was to the picture screen which was "affixed" to the building. We assume, as the plaintiffs argue, that it was a fixture. But it does not follow that it constituted part of the "premises" within the meaning of the policy. Earlier in the very portion of the policy, Coverage D (2), under which the plain-

tiffs seek to recover there is a clause covering "loss of other property or damage thereto caused by robbery within the premises." "Property" is defined as "money, securities, merchandise, furnishings, equipment or other tangible personal property, and *fixtures, real or personal*" (emphasis supplied). An examination of other clauses in the policy reveals an intent to differentiate between "premises" and "fixtures." For example, Coverage B (2) affords protection for "damage to the *premises* and to merchandise, furnishings, *fixtures* and equipment within the premises caused by burglary [or] robbery of a watchman" (emphasis supplied). Other clauses in Coverage D indicate that whenever the word "premises" is used it applies only to the building itself, and not to its contents. Thus when Coverages D (4) and D (5) include property within their scope, they refer specifically to "damage to the premises *and to property within the premises*" (emphasis supplied). We conclude, therefore, that the words "damage to the premises" in Coverage D (2) did not protect the plaintiffs, with an exception presently to be noted, with respect to any of the property here involved. And subject to this exception the order of the Appellate Division was correct.

At the arguments before us, counsel for the defendant stated that if there was a burglarious entry the plaintiffs are entitled to recover the sum of $44.50, the cost of repairing the exit doors.[2] Since we have held that there was a burglarious entry, the plaintiffs are entitled to recover this sum. Accordingly, to permit such recovery, the order of the Appellate Division, otherwise correct, must be reversed and judgment is to be entered for the plaintiffs in the sum of $44.50.

*So ordered.*

---

[2] It does not appear that this concession was made before either the trial judge or the Appellate Division.