SUSAN B. DILBERT & another[1] *vs.* HANOVER INSURANCE
COMPANY.

No. 04-P-156.

Norfolk. December 16, 2004. - April 27, 2005.

Present: GELINAS, DUFFLY, & MILLS, JJ.

*Insurance,* Defense of proceedings against insured. *Contract,* Performance and breach. *Real property,* Trespass.

A Superior Court judge erred in granting summary judgment to an insurance company on a claim that it had a duty to defend its insureds under their homeowner's policy against a claim for wrongful entry brought by the person from whom the insureds had purchased their residence (seller), relating to the residence's associated parking spot, where the policy at issue covered claims for wrongful entry, which, outside the landlord-tenant context, equated to trespass [330-333]; where the allegations of the seller's complaint met the elements of trespass at common law [333-334]: and where a limiting construction of the policy's "occurrence" requirement that would exclude intentional acts of trespass was disfavored [334-335].

CIVIL ACTION commenced in the Superior Court Department on January 5, 2001.

The case was heard by *Ernest B. Murphy,* J., on motions for summary judgment.

*Daniel B. Shapiro* for the plaintiffs.

*John H. Bruno, II,* for the defendant.

MILLS, J. The plaintiffs, Susan B. Dilbert and Seth D. Kilgore, purchased a condominium residence from Ellen Remsen and two years later a dispute arose as to the ownership of the condominium's parking space. Remsen filed a complaint against the plaintiffs in consequence of the dispute. The plaintiffs demanded that the Hanover Insurance Company (Hanover) defend them with respect to the Remsen complaint, on the basis of their homeowner's insurance policy with Hanover (the

---

[1]Seth D. Kilgore.

policy). After Hanover refused, the plaintiffs settled the Remsen action without the participation of Hanover and then commenced the present action against Hanover seeking damages for breach of contract and declaratory judgment that under the policy Hanover was required to defend and indemnify them against the Remsen action. A Superior Court judge allowed Hanover's motion for summary judgment and denied the plaintiffs' motion for summary judgment. We reverse.

1. *Background.* The facts are not in dispute for purposes of the judge's decision and this appeal.

a. *The real estate transaction between Remsen and the plaintiffs.* In 1988, Remsen as seller and the plaintiffs as buyers executed a purchase and sale agreement for the purchase of the condominium unit, excluding the parking space. The purchase and sale agreement specifically stated that the space would not be conveyed with the unit. Remsen then executed the unit deed conveying the unit together with the parking space to the plaintiffs, even though the purchase and sale agreement did not require her to include the space in the deed. Contemporaneously with the execution of the deed, Remsen and the plaintiffs executed a separate purchase and sale agreement for the parking space, by which the plaintiffs sold the space to Remsen for one dollar (and acknowledged receipt of payment). The transaction included Remsen's right, for the period of one year (with an option for an additional year) to sell the parking space to a third party and the plaintiffs' agreement to transfer the deed to a third party if asked to do so. Remsen rented the space to another condominium resident, but did not sell it within the allotted two years.

b. *The dispute and the Remsen complaint.* When the two-year period elapsed, the plaintiffs determined that Remsen no longer had any claim to the parking space, and that they were free to use it. Remsen disagreed and demanded that they cease its use. When the plaintiffs failed to comply, Remsen commenced an action against the plaintiffs in Superior Court alleging, among other things, that the plaintiffs were using the parking space in derogation of her rights and to her exclusion, as she had retained "equitable title" to the space. Remsen's verified complaint recited five separate causes of action: declaratory judgment,

specific performance, unjust enrichment, rescission, and resulting trust. She sought damages for the unauthorized use of the space, and in her complaint she explicitly alleged her loss of use of the space as the result of the plaintiffs' use. As discovery progressed, in her answers to interrogatories, Remsen made specific allegations of loss of use, wrongful entry, and wrongful eviction.[2]

c. *The policy language.* The insurance policy provides the following in pertinent part:

> "If a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies, we will . . . [p]ay up to our limit of liability for the damages for which the 'insured' is legally liable . . . [and] [p]rovide a defense at our expense . . . , even if the suit is groundless, false or fraudulent."

And the definition section of the policy also states as follows:

> "1. 'Bodily injury' means bodily harm, sickness or disease.
>
> ". . .
>
> "5. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results . . . in:
>
> "a. 'Bodily injury'; or
>
> "b. 'Property damage.'
>
> "6. 'Property damage' means physical injury to, destruction of, or loss of use of tangible property."

The policy also includes an endorsement modifying the definition of " 'bodily injury' . . . to include . . . personal injury" and defining " 'personal injury' [as] injury arising out of one or

---

[2]Remsen stated the following in response to certain interrogatories: "The [plaintiffs] have caused me to lose use of [the parking space]. . . . As a result of [their] conduct, I have been constructively and actually evicted from using [the parking space]. . . . [They] have wrongfully entered [the parking space]."

more of the following offenses: . . . 3. Invasion of privacy, wrongful eviction or wrongful entry."[3]

d. *Plaintiffs' demand and Hanover's refusal.* Defense of the Remsen action was tendered to Hanover by letter dated January 6, 1995, with an enclosed copy of the complaint and an explanation of the basis upon which the plaintiffs demanded defense and indemnification. Hanover declined.

Plaintiffs made a renewed demand to Hanover by letter dated August 14, 1997, enclosing Remsen's answers to interrogatories (see note 2, *supra*). Hanover again declined to provide indemnification or a defense. At no time prior to either of its refusals to defend did Hanover make any inquiries of either plaintiff concerning the Remsen allegations. The plaintiffs retained personal counsel and settled the Remsen action on March 16, 2000. The settlement of all claims required a payment of $18,750 by the plaintiffs to Remsen.

The plaintiffs commenced the instant action on January 5, 2001. After a hearing on cross motions for summary judgment, the judge ruled that the Remsen complaint was outside the scope of the policy because coverage for both bodily injury and property damage required that there be an occurrence — defined in the policy as an accident, which the judge took to imply an unexpected or fortuitous event, citing *Smartfoods, Inc.* v. *Northbrook Prop. & Cas. Co.*, 35 Mass. App. Ct. 239, 242 (1993). The judge characterized Remsen's complaint as a claim that the plaintiffs intentionally occupied the parking space over a period of time, rather than a dispute arising from an occurrence. The judge also opined parenthetically that the matter was in essence a contractual dispute not involving property damage or bodily injury within the meaning of the policy.

2. *Discussion.* a. *The duty to defend.* As a general rule, the policyholder bears the initial burden of proving coverage within the policy description of covered risks. *Markline Co.* v. *Travelers Ins. Co.*, 384 Mass. 139, 140 (1981). The scope of the insurer's duty to defend is "based not only on the facts alleged in the complaint[] but also on the facts that are known or readily

---

[3]Also included in the list of offenses are "false arrest, detention or imprisonment, or malicious prosecution; [and] libel, slander or defamation of character."

knowable by the insurer." *Desrosiers* v. *Royal Ins. Co. of America*, 393 Mass. 37, 40 (1984). The duty to defend arises when the allegations in the complaint " 'are "reasonably susceptible" of an interpretation that they state or adumbrate a claim covered by the policy terms' (citations omitted)." *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430 Mass. 794, 796 (2000), quoting from *Liberty Mut. Ins. Co.* v. *SCA Servs., Inc.*, 412 Mass. 330, 332 (1992). Moreover, that some or even many of the underlying claims may fall outside the policy coverage does not excuse the insurer from its defense obligation. *Simplex Technologies, Inc.* v. *Liberty Mut. Ins. Co.*, 429 Mass. 196, 199 (1999), citing *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 322 (1991).

b. *Claim against the insureds for wrongful entry.* The policy endorsement at issue here modifies the definition of "bodily injury" to include injury arising out of "wrongful entry." The plaintiffs argue that the complaint against them alleged wrongful entry, drawing that term from within the definitional language of the policy. Contrast *LaFrance* v. *Travelers Ins. Co.*, 32 Mass. App. Ct. 987, 988 (1992). The policy endorsement does not define the term wrongful entry, and Massachusetts courts have yet to address the definition of that term as set out in an insurance policy. However, as the following analysis establishes, a claim for simple trespass will support the insureds' demand that the insurer owes a duty of defense against the underlying complaint. While Remsen alleged other claims against the plaintiffs that are not reasonably susceptible of an interpretation that they state or adumbrate a claim covered by policy terms, we hold that the complaint and answers to interrogatories provided to Hanover set forth a claim for wrongful entry. See *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430 Mass. at 796.

Relying on *Dryden Oil Co. of New England* v. *Travelers Indem. Co.*, 91 F.3d 278, 287 (1st Cir. 1996) (*Dryden*), Hanover argues that wrongful entry is a cause of action found exclusively in landlord-tenant law, and that therefore Remsen's complaint could not have alleged it. We disagree.

The court in *Dryden* held that the wrongful entry clause of a comprehensive general liability policy did not cover a cause of

action outside the landlord-tenant relationship. The court "decline[d] to broaden the scope of the Massachusetts tort of wrongful entry absent a clear signal from the Commonwealth's courts," *id.* at 287 n.9, because the "Massachusetts tort of wrongful entry has yet to be extended beyond trespasses by landlords upon the leased premises." *Id.* at 287.

Although the court in *Dryden* stated that "Massachusetts case law has defined the tort of wrongful entry only in the context of an intrusion by the landlord upon the premises leased by its tenant," *id.* at 287 n.9, we note that our appellate courts have not had the opportunity to distinguish wrongful entry and trespass in any meaningful way. The few Massachusetts appellate decisions that employ the term "wrongful entry" do not restrict it to landlord-tenant situations, and use trespass and wrongful entry interchangeably. See, e.g., *Brown* v. *General Trading Co.*, 310 Mass. 263, 267-268 (1941) (plaintiff sought ruling that entry by defendant was wrongful, where defendant was not landlord); *Tinkham* v. *Wind*, 319 Mass. 158, 159 (1946) (plaintiff sued in tort for damages for alleged wrongful entry by defendant and deprivation of possession of premises leased from defendant); *Western Mass. Theatres, Inc.* v. *Liberty Mut. Ins. Co.*, 354 Mass. 655, 657 (1968) ("The defendant has not raised the issue whether the wrongful entry was felonious"); *Gidwani* v. *Wasserman*, 373 Mass. 162, 163 (1977) ("plaintiff lessee . . . brought an action for breach of contract and *tort for trespass* . . . [seeking] recovery for *wrongful entry* and possession of premises" [emphasis supplied]).[4]

Cases from other jurisdictions also have employed the term "wrongful entry" outside the landlord-tenant context. See, e.g., *Wackenhut Servs., Inc.* v. *National Union Fire Ins. Co. of Pittsburgh, Pa.*, 15 F. Supp. 2d 1314, 1323 (S.D. Fla. 1998) (suggesting that wrongful eviction involves landlord, but wrongful entry is simply "by another in derogation of the plaintiff's ownership, tenancy, or easement"); *Watson* v. *State*, 63 Ala. 19,

---

[4]General Laws c. 237, establishing writs of entry, and cases thereunder provide further support for the proposition that wrongful entry and trespass are equivalent in Massachusetts law. See, e.g., *Sea Pines Condominium III Assn.* v. *Steffens*, 61 Mass. App. Ct. 838, 844 n.14 (2004) (noting that proper remedies for "unauthorized entry" onto land include an action for trespass or seeking a writ of entry).

20-21 (1879) (statute criminalizing trespass defined offense in terms of wrongful entry); *Lewis* v. *State*, 99 Ga. 692, 693 (1896) (unlawful or wrongful entry discussed interchangeably with trespass); *James* v. *City of Kansas*, 83 Mo. 567, 569 (1884) (claimed wrongful entry and construction of sewer was "action for trespass to real estate"); *Buehrer* v. *Provident Mut. Life Ins. Co.*, 123 Ohio St. 264, 270-271 (1931). Similarly, Black's Law Dictionary primarily defines a trespass as "[a]n unlawful act committed against the person or property of another; esp., *wrongful entry* on another's real property" (emphasis supplied). Black's Law Dictionary 1541 (8th ed. 2004).

Having determined that trespass equates to wrongful entry, we turn now to the facts as alleged in the underlying action against the insureds and known or readily knowable to the insurer. The allegations in Remsen's complaint meet the elements of trespass at common law. Remsen alleged that she was in possession of the parking space at the time the plaintiffs entered, that they occupied the space with their car, and that they failed to remove their car when instructed to do so. See *New England Box Co.* v. *C & R Constr. Co.*, 313 Mass. 696, 707 (1943) (plaintiff must prove she is in possession of property); *Gage* v. *Westfield*, 26 Mass. App. Ct. 681, 695 n.8 (1988) (trespasser is one "who enters or remains upon land in the possession of another without a privilege to do so"), quoting from Restatement (Second) of Torts § 329 (1965); *id.* at § 158 ("One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally [a] enters land in the possession of the other, or causes a thing or a third person to do so, or [b] remains on the land, or [c] fails to remove from the land a thing which he is under a duty to remove").

Perhaps anticipating that this court would determine wrongful entry and trespass to be the same cause of action, Hanover further argues that Remsen's complaint could not have alleged trespass because Remsen was not in actual possession of the parking space. See *Attorney Gen.* v. *Dime Sav. Bank of N.Y., FSB*, 413 Mass. 284, 285, 288-289 (1992) (*Dime Savings Bank*) (plaintiff owner out of possession does not have constructive possession to bring action for trespass where actual possession

is in another). Hanover's argument is unpersuasive for two reasons. First, possession does not require that the plaintiff physically occupy the property at the time of the alleged trespass. See *Chesarone* v. *Pinewood Builders, Inc.*, 345 Mass. 236, 238-240 (1962) (owner of unoccupied land established claim for trespass). Second, this court looks to the possessor of the parking space *at the time of the alleged wrongful entry*. See *Emerson* v. *Thompson*, 2 Pick. 473, 484 (1824) ("[a]n action of trespass, being a possessory action, cannot be maintained, unless the plaintiff had the actual or constructive possession of the property trespassed upon, *at the time of the trespass*" [emphasis supplied]).

At the time of the plaintiffs' entry, they did not have actual possession. (To the extent they had actual possession at any time, it was *after* they entered the space.) Unlike *Dime Savings Bank*, in which the dispute concerned a party without possession against a party with actual possession, the present case concerns one party with constructive possession (Remsen) against other parties without possession at the time of entry (the plaintiffs). Thus, *Dime Savings Bank* does not control the present case.

c. *"Occurrence" requirement.* The motion judge concluded that the circumstances could not trigger coverage because there was no "occurrence," defined in the policy as an "accident." Although "accident" is undefined in the policy, in the judge's view, the term "implies the unexpected, fortuitous event" and does not include the activity of the plaintiffs in "intentionally occup[ying] the parking space over a period of time."

We are obliged to harmonize the occurrence requirement with the later-added language of the policy endorsement, which, by its terms, and "[f]or an additional premium," "change[d] the policy." The endorsement purports to extend coverage to a number of claims that are generally considered intentional torts. See note 3 and accompanying text, *supra*. Specifically at issue here is wrongful entry, which we have concluded is a phrase used in our law analogously to trespass upon land. Among the varieties of actionable trespass to land, however, are intentional and negligent forms. Compare *Edgarton* v. *H.P. Welch Co.*, 321 Mass. 603, 612 (1947), and Restatement (Second) of Torts

§§ 158, 163 comments b, c (1965) (intentional trespass), with *DeSanctis* v. *Lynn Water & Sewer Commn.*, 423 Mass. 112, 118 (1996) (negligent trespass), citing Restatement (Second) of Torts § 165 (1965). Although as a matter of language a negligent trespass might conceivably be described as caused by an "accident,"[5] the language of the endorsement here, covering "wrongful entry" without further elaboration, fails to make any distinction between intentional and unintentional forms. We view the policy provisions on the whole as, at best, ambiguous or, at worst, in direct conflict[6] on the question whether an intentional trespass is covered. "[W]hen construing the language of an insurance policy, it is appropriate 'to consider [whether] an objectively reasonable insured, reading the relevant policy language, would expect to be covered.' *Hazen Paper Co.* v. *United States Fidelity & Guar. Co.*, 407 Mass. 689, 700 (1990). Furthermore, we realize that an insured is entitled to the most favorable interpretation of the policy language . . . where the policy language is ambiguous." *Nashua Corp.* v. *First State Ins. Co.*, 420 Mass. 196, 200 (1995).[7] In the circumstances here, we conclude that a limiting construction of the "occurrence" requirement must give way in favor of coverage.[8]

3. *Conclusion.* Hanover's argument that wrongful entry is a tort recognized only in landlord-tenant situations incorrectly

[5]It should be noted, however, that in the trespass context, the Restatement uses the term "accident" to refer to conduct that is unintentional and non-negligent. See Restatement (Second) of Torts §§ 165, 166 & comments b, c (1965). See also *Edgarton* v. *H.P. Welch Co.*, 321 Mass. at 612.

[6]See generally 2 Windt, Insurance Claims & Disputes § 11:28, at 608 (4th ed. 2001) ("First, if, as is typical, one of the requirements for an occurrence is an accident, that coverage requirement is unenforceable [because] [t]he offenses listed in the definition[] of personal injury . . . cannot be reconciled with the requirement that there be an accident").

[7]We also note that "the resulting injury which ensues from the volitional act of an insured is still an 'accident' within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur," *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 84 (1984). See *Smartfoods, Inc.* v. *Northbrook Prop. & Cas. Co.*, 35 Mass. App. Ct. at 242.

[8]Hanover also argues for the application of the general coverage exclusion for bodily injury or property damage "[w]hich is expected or intended by the 'insured.' " However, the personal injury endorsement itself specifies that the "[e]xclusion[] do[es] not apply to personal injury." We also observe that this negation of the exclusion strengthens the implication that the endorsement is

states the law. Because Remsen's action against the plaintiffs alleged trespass and stated a claim for wrongful entry, Hanover had a duty to defend its insureds. See *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 10-11 (1989). The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion, including a determination of the amount, if any, that Hanover must pay to indemnify the plaintiffs for the payment they made in settlement of the Remsen action. See *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 764-766 (1993).

*So ordered.*

---

meant to provide coverage when any of the enumerated torts results in injuries "expected or intended by the 'insured.' "