CITATION INSURANCE COMPANY *vs*. MARY BLAKE NEWMAN.[1]

No. 10-P-331.

Middlesex. January 13, 2011. - August 18, 2011.

Present: KAFKER, COHEN, & RUBIN, JJ.

*Insurance,* Homeowner's insurance, Insurer's obligation to defend, Coverage, Property damage. *Contract,* Insurance, Performance and breach, Implied covenant of good faith and fair dealing. *Nuisance. Trespass. Libel and Slander. Real Property,* Nuisance, Trespass. *Practice, Civil,* Summary judgment.

In a civil action brought by an insurance company (plaintiff) seeking a judgment declaring that a homeowner's policy it issued did not provide coverage for claims asserted by the defendant in a counterclaim (for nuisance, trespass, wilful trespass, and defamation, based on the insured's air conditioning unit's intrusion into the yard of the defendant's condominium unit) in an underlying action, the judge erred in granting summary judgment in favor of the plaintiff, where the defendant's counterclaim alleged property damage as defined by the policy, and the fact that the defendant's interest in the yard in question was an easement made no difference in the analysis whether she had suffered an injury to or loss of use of tangible property, as the real property in question remained tangible property; and where the counterclaim could have been understood to encompass a claim for loss of use of the interior space of the defendant's condominium unit. [146-150]

CIVIL ACTION commenced in the Superior Court Department on May 9, 2008.

The case was heard by *John J. Curran, Jr.,* J., on motions for summary judgment.

*John R. Mayer* for the defendant.

*John G. Ryan* for the plaintiff.

COHEN, J. This insurance coverage case arises from a dispute between John Hanratty and Mary Blake Newman, owners of adjacent units at a small Cambridge condominium. The bone of

---

[1]Individually and as assignee of John Hanratty.

contention was Hanratty's through-the-wall air conditioner, which projected into a yard area to which Newman held an exclusive easement. Over time, Newman repeatedly complained to Hanratty that his air conditioner intruded into her yard and emitted excessive noise, hot air, and vibrations. Hanratty was not receptive to Newman's complaints, and their interactions became increasingly testy. Eventually, Newman resorted to self-help by sealing the air conditioner with duct tape to make it unusable.

Hanratty responded by going to court. On June 18, 2007, he filed a pro se complaint against Newman in Superior Court, seeking to restrain her from interfering with his air conditioner and requiring her to stay ten yards away from him and his family. Newman rejoined with a counterclaim demanding damages on theories of nuisance, trespass (on account of the intruding air conditioner), "wilful trespass" (on account of Hanratty's alleged entry into Newman's yard without permission in order to take photographs of the air conditioner), and defamation.[2] In addition to damages, Newman also sought an order requiring that the air conditioner be removed.

Hanratty forwarded the counterclaim to his homeowner's insurer, Citation Insurance Company (Citation), which agreed to provide him with a defense, subject to a reservation of rights. In view of the reservation of rights, Hanratty selected his own counsel, Attorney Michael Fee, to represent him at Citation's expense;[3] however, Citation was unwilling to pay Attorney Fee's usual $260 hourly rate. After some back-and-forth, it was agreed that Attorney Fee would bill at the rate of $260, Citation would pay $130 per hour, and Hanratty would retain the right to seek the difference from Citation.[4]

In May, 2008, while the underlying action remained pending,

---

[2]Although the motion judge apparently was under the impression that the trespass claim sought only equitable relief, the prayer in Newman's counterclaim indicates she also sought damages.

[3]It was Hanratty's option to do so. See *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 406-407 (2003).

[4]The insurer's obligation is to pay the reasonable charges of the insured's retained counsel. *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 685 (1964). In a recent decision of this court, it has been clarified that reasonable charges are to be assessed with reference to market rates; an insurer may not insist

Citation filed a complaint for declaratory judgment against Hanratty and Newman, seeking a determination that its policy did not provide insurance coverage for the claims asserted in Newman's counterclaim, and, hence, it had no ongoing duty to defend. Hanratty counterclaimed, alleging that Citation was in breach of the insurance contract and the implied covenant of good faith and fair dealing by refusing to pay the full value of his attorney's services and by failing to defend and indemnify him, and that Citation had violated G. L. cc. 93A and 176D in arriving at its coverage position and in the handling of the claim.

By the fall of 2008, Hanratty and Newman were able to reach an accord in the underlying case. Hanratty removed the offending air conditioner (according to Newman's brief, he installed central air conditioning), and he and Newman entered into a settlement agreement. Pursuant to the agreement, they exchanged mutual releases, and Hanratty assigned his counterclaim against Citation to Newman.

The declaratory judgment action continued between Citation and Newman, individually and as the assignee of Hanratty's counterclaim. In June, 2009, a judge of the Superior Court ruled, on cross motions for summary judgment filed by Newman and Citation, that the insurer was not obligated to defend Hanratty. Subsequently, in November, 2009, a second judge of the Superior Court dismissed the Hanratty counterclaim on Citation's motion and ordered that final judgment enter for Citation.

Before us is Newman's appeal from that judgment. She contends that Citation had a duty to defend Hanratty and that she therefore is entitled to certain attorney's fees and costs incurred by her and Hanratty in the coverage litigation. She also contends that the Hanratty counterclaim assigned to her should not have been dismissed. We conclude that summary judgment should not have entered for Citation, but that additional issues remain to be decided before the question of its duty to defend can be determined. We also conclude that, because Citation was

on paying only the discounted rate it has been able to negotiate with its panel of attorneys. See *Northern Sec. Ins. Co.* v. *R.H. Realty Trust*, 78 Mass. App. Ct. 691, 694-695 (2011).

not entitled to summary judgment, and the validity of its coverage position remains a live issue, dismissal of the counterclaim was premature.

*Discussion.* We review the judge's summary judgment rulings de novo, see *Utica Mut. Ins. Co.* v. *Fontneau,* 70 Mass. App. Ct. 553, 556 (2007). In performing our review, we are guided by well-established principles governing the insurer's duty to defend.

"[T]he question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Sterilite Corp.* v. *Continental Cas. Co.,* 17 Mass. App. Ct. 316, 318 (1983). "The process is not one of looking at the legal theory enunciated by the pleader but of 'envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.' " *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.,* 406 Mass. 7, 12-13 (1989), quoting from *Continental Cas. Co.* v. *Gilbane Bldg. Co.,* 391 Mass. 143, 147 (1984). Furthermore, in analyzing the potential scope of the complaint, consideration must be given to extrinsic facts known or readily knowable by the insurer, which place liability within the coverage of the policy. See *Desrosiers* v. *Royal Ins. Co. of America,* 393 Mass. 37, 40 (1984); *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co., supra* at 10-11; *Dilbert* v. *Hanover Ins. Co.,* 63 Mass. App. Ct. 327, 330-331 (2005).

In arguing that Citation had a duty to defend Hanratty, Newman relies on only two of the four counts of her counterclaim: the count alleging trespass resulting from the intrusion of the air conditioner into her yard, and the count alleging nuisance resulting from the air conditioner's operation.[5] The relevant allegations of those counts are that, pursuant to the condominium

---

[5]If the complaint in question contains a covered claim, the insurer's duty to defend extends to other counts of the complaint, as well. See *Palermo* v.

master deed, Newman's unit comes with an exclusive easement and right to use the yard; the air conditioner trespasses into the yard; and, when the air conditioner is operating, it is "unreasonably noisy," "causes vibrations which can be felt on [Newman's] deck,"[6] "projects a blast of hot air over [Newman's] yard area," and "creates a substantial and unreasonable interference with [Newman's] use and enjoyment of her property."

The Citation policy is a standard form condominium unit owner's homeowner's policy. The insuring agreement for Section II — Liability Coverages, provides, in relevant part, that the insurer will defend and indemnify claims "brought against an 'insured' for damages because of . . . 'property damage' caused by an 'occurrence' to which this coverage applies." It is undisputed that this is the only grant of coverage potentially applicable here,[7] and that it is subject to an exclusion for property damage "[w]hich is expected or intended by the 'insured.' "

The policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . '[p]roperty damage.' " In addition, this particular policy defines "[p]roperty damage" to mean "physical injury to, destruction of *or* loss of use of tangible property" (emphasis added). While liability policies can be written so that "loss of use" does not, by itself, constitute property damage, it is manifest from the use of the disjunctive that Citation's policy uses the more typical approach of defining property damage to include the loss of use of physically uninjured tangible property. See generally Windt, Insurance Claims and Disputes § 11.1 & n.2 (5th ed. 2007). Citation's efforts to argue otherwise are unavailing.

Even though each of the above-quoted policy provisions has potential relevance to the question of coverage, for present

*Fireman's Fund Ins. Co.*, 42 Mass. App. Ct. 283, 289-290 (1997). See also *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 732 n.1 (1992).

[6]As indicated by the condominium master deed, which is attached as an exhibit and incorporated into the counterclaim, the deck, like the yard, is a common area to which Newman, as owner of her particular unit, has an exclusive easement and right of use.

[7]Unlike some liability policies, this one has no endorsement providing coverage for enumerated intentional torts, such as defamation or wrongful entry. Compare *Dilbert* v. *Hanover Ins. Co.*, 63 Mass. App. Ct. at 329-330.

purposes, the focus is a narrow one. At this juncture, Citation relies upon only one argument — that Newman's claims do not allege "property damage" as defined by the policy. Citation does not waive the other coverage defenses it has asserted in its declaratory judgment complaint, i.e., the absence of an "occurrence," and the applicability of the "expected or intended" exclusion, but it acknowledges that those defenses are fact-sensitive and not readily resolved on the summary judgment record presented below. More particularly, Citation argues that any possible physical damage or loss of use suffered by Newman affected only an easement. According to Citation, an easement is merely an "intangible" interest in the property of another and, therefore, does not constitute "tangible property" as required by the policy definition of "property damage." Although this argument persuaded the motion judge, we reach a different conclusion.

For purposes of liability insurance coverage, the distinction between tangible and intangible property has been aptly summarized as follows. "Tangible property is property that can be touched, or property capable of being possessed. Intangible property is property that does not have intrinsic value, but rather is merely representative or evidence of value, such as a stock certificate or a liquor license" (footnotes omitted). Windt, Insurance Claims and Disputes § 11.1, at 11-3-4. There can be no doubt that real property, such as a yard, is tangible property. See *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. at 147 (John Hancock tower deemed "tangible property"). See also *A.B.C. Builders, Inc.* v. *American Mut. Ins. Co.*, 139 N.H. 745, 748 (1995) (real property alleged to have been damaged by insured's encroachment deemed "tangible property").

The question remains whether the nature of Newman's interest in the yard makes any difference to the analysis. We conclude that it does not. An easement is an interest in real property, albeit one that is nonpossessory. The salient difference between an easement and an estate is only that the holder of an easement does not *possess* the realty as does an estate owner; rather, the holder may *use* the land burdened by the easement to the extent defined by its terms. That said, this difference does not mean that an easement is merely an "intangible" interest. As explained in a leading treatise:

> "This distinction [between right of use and right of possession] caused many early courts and commentators to categorize easements as 'incorporeal hereditaments,' that is, nonphysical inheritable rights. See Restatement of Property § 450 cmt. c. The 'incorporeal' label is ill-advised in that it implies a greater difference between easements and estates in land than in fact exists. *As noted, the distinction is nonpossessory/possessory, not nonphysical/physical. All estates, interests, and rights in property are without material substance; each is an abstract concept recognized in the law. It is only the property itself that physically exists.*" (Emphasis added.)

Bruce & Ely, The Law of Easements and Licenses in Land § 1.1 n.6 (2001).

Viewed in this light, for purposes of deciding whether there has been injury to or loss of use of tangible property, it makes no meaningful difference which abstract legal concept has given rise to the claimant's rights in real property. Whether the claimant owns, rents, or holds an easement to it, the real property in question remains tangible property. Indeed, the absence of any meaningful distinction is especially evident in this case, where the easement is exclusive and, for functional purposes, essentially indistinguishable from a fee. Because, no less than an estate, Newman's easement confers rights in property that physically exists, her allegations of injury to or loss of use of the yard are allegations of injury to or loss of use of tangible property as required by the definition of property damage contained in Citation's policy.[8]

Furthermore, there is an additional independent reason for imposing upon Citation a duty to defend Newman's counterclaim

---

[8]In support of its position, Citation points to a case of the California Supreme Court, *Kazi* v. *State Farm Fire & Cas. Co.*, 24 Cal. 4th 871, 881 (2001), in which it was held that an insurer did not have a duty to defend an underlying action involving a claimed easement, because there was no allegation of injury or loss of use of tangible property. *Kazi* presented a different situation, however, because the plaintiffs in the underlying action were seeking to establish that they had an implied nonexclusive easement, which had been impaired by the insureds. Here, on the other hand, Newman alleged injury to and loss of use of an existing express easement. Regardless of this distinction, however, to the extent that *Kazi* turned on the notion that an easement is merely an "intangible" interest, we decline to follow it for the reasons stated above.

against Hanratty. At least when viewed in conjunction with extrinsic facts of which Citation was on notice, the counterclaim reasonably should have been understood to encompass a claim by Newman for the loss of use not only of the yard but also of the interior space in her condominium unit. At the inception of the underlying case, Newman filed an affidavit, dated June 21, 2007, in opposition to Hanratty's motion for a preliminary injunction. In the course of investigating the claim, as it was obligated to do, Citation knew or reasonably should have known of this affidavit long before filing its declaratory judgment action, and even before it issued its first reservation of rights letter. Among other things, Newman averred: "When the air conditioner is operating, I can hear it in my unit. I can feel its vibrations through the floor when I'm on my balcony. When it's running, it interferes with conversations in my living room, especially if I leave my outside door open for cross-ventilation purposes. In fact, it's so noisy that I can't leave my windows and door open (as I would otherwise prefer), and I can hear it over the television." These elaborations showed that, even apart from her concerns about the yard, Newman's counterclaim was seeking damages for loss of use of tangible property.

For the foregoing reasons, Citation's motion for summary judgment should not have been allowed. That is not to say that the duty to defend issue was required to be resolved against Citation, as Newman urges us to decide. There remain other grounds, not waived by Citation, which remain to be considered before a determination can be made as to its duty to defend. We do agree with Newman, however, that where the erroneous allowance of Citation's motion for summary judgment supplied the impetus for dismissing the Hanratty counterclaims assigned to her, those counterclaims must be reinstated.[9]

The judgment is vacated. This matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[9]In view of our decision, we need not consider an additional procedural argument made by Newman relating to the service, withdrawal, and reservice of Citation's motion for summary judgment.