NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-839                                          Appeals Court

 ROMAN CATHOLIC ARCHBISHOP OF BOSTON  vs.  JON ROGERS & others.[1]


No. 15-P-839.

Norfolk.     July 22, 2015. - October 14, 2015.

Present:  Vuono, Carhart, & Blake, JJ.


Religion.  Church.  Jurisdiction, Ecclesiastical controversy.
    Real Property, Trespass.  Trespass.  Practice, Civil,
    Motion to dismiss, Jury trial, Standing, Continuance,
    Injunctive relief.



     Civil action commenced in the Superior Court Department on March 10, 2015.

     A motion to continue was heard by Edward P. Leibensperger, J., and the case was heard by him.


     Mary Elizabeth Carmody for the defendants.
     William J. Dailey, Jr., for the plaintiff.

---

[1] Friends of St. Frances X. Cabrini, Inc. (Friends); Mary Ellen Rogers, individually and as vice president of Friends; Margaret O'Brien, individually and as clerk of Friends; Nancy Shilts, individually and as treasurer of Friends; John Doe 1 to 6; Mary Roe 1 to 6; other John Does and Mary Roes; and all other persons acting at the direction of or in concert with said defendants.

CARHART, J.  This case arises from the suppression of St. Frances X. Cabrini Church in Scituate (church).[2]  The defendants are former parishioners of the church who have maintained an around-the-clock, seven-days-per-week vigil since the decree of suppression entered in October, 2004.  In February, 2015, the Roman Catholic Archbishop of Boston (RCAB) notified the defendants that they must end their vigil and leave the church or face legal action.  The defendants refused to leave and the RCAB instituted this action for declaratory and injunctive relief.  Following a bench trial before a judge in the Superior Court, judgment entered against the defendants declaring them to be trespassers and permanently enjoining them from entering on church property.  This appeal followed.[3]

On appeal, the defendants argue that the judge made several erroneous pretrial rulings, including denying their motion to dismiss and declining their demand for a jury trial.  They further contend that facts found by the judge in support of the trespass claim were clearly erroneous.  We affirm.

---

[2] "'Suppression' is a term of the Roman Catholic Code of Canon Law, which means to end the existence of a parish." Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 236 n.3 (2007).

[3] A stay of judgment was entered by a single justice of this court.  The parties agreed to an expedited briefing and hearing schedule.

Background facts. We outline the relevant facts, reserving discussion of some facts for the issues raised.

The RCAB is a corporation sole organized under c. 506 of the Acts of 1897. It is the record owner of the property located at 27-31 Hood Road, Scituate, on which the church stands. In May, 2004, the Archbishop of Boston, Cardinal Seán O'Malley, announced that the church would be closed as part of the RCAB's ongoing "reconfiguration process." He issued a decree suppressing the church on October 5, 2004, which became effective on October 29, 2004. Under the Universal Law of the Roman Catholic Church (canon law), the suppression of the church meant that the church no longer was part of a designated Roman Catholic parish.

In July, 2005, the defendants commenced a civil action against the RCAB, seeking a declaration that the RCAB holds the church in trust under G. L. c. 67, §§ 44-46, for the sole benefit of the parishioners.[4] A judge in the Superior Court allowed the RCAB's motion to dismiss the defendants' complaint for failure to state a claim upon which relief can be granted. The judgment was affirmed by a panel of this court in an unpublished decision issued pursuant to our rule 1:28. Rogers

---

[4] The defendants also sought an order enjoining the RCAB from disposing of the church or its surrounding properties.

v. Roman Catholic Archbishop of Boston, 72 Mass. App. Ct. 1117 (2008) (Rogers I).

In June, 2014, the Vatican's highest court notified the parties that it had denied the defendants' final appeal from the RCAB's decisions to close the parish and to deconsecrate the church. Cardinal O'Malley then asked the parishioners to end the vigil and leave the property. On February 3, 2015, the RCAB sent the defendants a formal notice to vacate the church on or before March 9, 2015, or face legal action. The defendants refused, and on March 10, 2015, the RCAB brought this action seeking a declaration that the defendants are unlawful trespassers. The RCAB also sought a preliminary injunction.

Following a hearing, a judge in the Superior Court consolidated the RCAB's request for a preliminary injunction with a trial on the merits, see Mass.R.Civ.P. 65(b)(2), 365 Mass. 832 (1974), and scheduled a trial date within thirty days. In a written memorandum of decision and order, the judge explained that his "principal reason for ordering consolidation is that the issues for trial are straightforward and limited"; to be entitled to relief, the RCAB must demonstrate a right to possession of the church and the defendants' intentional invasion of that right. The judge limited the proof at trial to RCAB's right of possession, stating that "[t]he trial will not concern defendants' alleged further appeal within the

ecclesiastical process regarding the closing of the parish or ownership of the [c]hurch . . . [or] the application or interpretation of canon law."  The judge also precluded evidence or argument that the defendants are equitable owners of the church, concluding that such matters already had been addressed in Rogers I.

The defendants thereafter filed an emergency motion to continue the trial date and to set a pretrial schedule, arguing that they needed more than thirty days to prepare for trial and to determine if the Attorney General should be joined as a necessary party pursuant to Mass.R.Civ.P. 19, 365 Mass. 765 (1974).  The defendants answered the verified complaint, asserting as affirmative defenses that (1) the judge should abstain from deciding the case while the defendants' appeals to the Vatican were pending; (2) the RCAB violated fiduciary duties owed to the defendants; (3) under canon law, the defendants are equitable owners of the church and therefore they are not trespassers; (4) the RCAB is violating the defendants' rights of the free exercise of religion; (5) the claim is barred by the doctrines of laches and unclean hands; and (6) the claim is barred by the statute of limitations.  The defendants also counterclaimed for money spent maintaining the church during the vigil and sought a jury trial on all of their defenses and the counterclaim.

On April 3, 2015, after a hearing on the emergency motion, the judge denied the defendants' demand for a jury trial on the basis that the RCAB was seeking equitable relief only.  He denied additional discovery "because [he did not] think there's even a contest over what the archdiocese is expecting to put into evidence, which is that they have the record title to the property," and he also denied the defendants' request to depose Cardinal O'Malley.  The judge allowed the defendants to present evidence in support of their defense of laches but denied their emergency motion to delay the trial.

On April 22, 2015, the defendants filed a "Motion to Dismiss Pursuant to Mass.R.Civ.P. 12(b)(1) and Alternatively, Motion for Reconsideration of the Court's Order Excluding Any Evidence of Canon Law."  The defendants argued that the court lacked jurisdiction because the case presented an ecclesiastic dispute and that, if the judge continued to assert jurisdiction, the defendants should be allowed to present evidence of canon law in support of their defense that they are equitable owners of the church.  The defendants also filed a motion in limine regarding the testimony of Cardinal O'Malley.  On April 28, 2015, the RCAB moved to dismiss the counterclaim.  In pretrial orders, the judge denied the defendants' motion to reconsider his ruling that canon law would not be considered at trial; ordered that the defendants' proposed witness list be narrowed;

precluded evidence that the defendants are the equitable owners of the church, based on their lack of standing; and denied the defendants' motion in limine regarding the testimony of Cardinal O'Malley, concluding that his testimony was not required on the defense of laches because there was no dispute that the RCAB knew of the vigil in 2004 and did not take legal action until 2015. The judge reserved argument on the motions to dismiss until the day of trial.

After a one-day bench trial, which took place on May 5, 2015, the judge issued a thoughtful and comprehensive memorandum of decision and order denying the defendants' motion to dismiss, allowing the RCAB's motion to dismiss the counterclaim, directing entry of a declaration that the defendants and those acting in concert with them are trespassers, and permanently enjoining the defendants and those acting in concert with them from entering the premises of the church, and judgment entered accordingly.

The defendants filed a notice of appeal dated May 22, 2015, from the judgment, the judge's memorandum and order for judgment, and all other pretrial rulings.[5] The defendants also

---

[5] Specifically identified in the notice of appeal are the judge's order on the scope of trial, the denial of the emergency motion to continue trial date and to set a pretrial schedule, a pretrial order dated April 2, 2015, and the judge's March 27, 2015, order on the RCAB's motion for preliminary injunction.

moved to suspend the injunction pending appeal, pursuant to Mass.R.Civ.P. 62(c), 365 Mass. 829 (1974). After that motion was denied, the defendants applied to a single justice of this court for an order suspending the injunction during the pendency of their appeal. See Mass.R.A.P. 6(a), as appearing in 454 Mass. 1601 (2009); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 614 (1980). The application was approved on June 3, 2015, and a stay issued that day. On July 22, 2015, a panel of this court heard oral argument.

Discussion. 1. Subject matter jurisdiction. The defendants sought dismissal of the complaint on the ground that their defenses to the civil trespass claim necessarily involve interpretation of canon law. Concluding that the issue of a property owner's right to determine who may be on the property could be resolved using "neutral principles of law," the judge denied the motion to dismiss and exercised jurisdiction.

There was no error. Massachusetts courts "have jurisdiction over church property disputes if and to the extent, and only to the extent, that they are capable of resolution under 'neutral principles of law' -- which the United States Supreme Court has defined as 'well-established concepts of trust and property law familiar to lawyers and judges.'" Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 243-244 (2007) (Maffei), quoting from Jones v. Wolf, 443 U.S. 595, 603

(1979).  "Thus, if a dispute can be resolved without inquiry into matters of religious doctrine or polity, a court may examine such sources as '(a) statutory provisions governing the holding of property by religious corporations; (b) the constitutions and by-laws of the religious organization involved, especially in so far as they pertain to the ownership and control of church property; and (c) the deeds to the property in question,' to resolve the dispute."  Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 786, cert. denied, 511 U.S. 1142 (1994) (Fortin), quoting from Antioch Temple, Inc. v. Parekh, 383 Mass. 854, 867 (1981).

Here, the judge could determine record ownership of the church and its surrounding property by examining the deeds and expert affidavits from both parties.  He could look to St. 1897, c. 506, to determine the extent to which the RCAB owns the church and is entitled to possession.[6]  A claim for trespass "depends upon the consent of the owner," Gage v. Westfield, 26 Mass. App. Ct. 681, 695 n.8 (1988), an issue the judge could decide by reference to documents already present in the record before him, and without delving into religious doctrine.  In

---

[6] Under St. 1897, c. 506, § 2, the RCAB is "empowered to receive, take and hold, by sale, gift, lease, devise or otherwise, real and personal estate of every description, for religious, charitable and burial purposes, and to manage and dispose of the same for the religious and charitable purposes of the Roman Catholic Church."

short, the judge could determine who owned the property and whether or not there was a "wrongful entry," Dilbert v. Hanover Ins. Co., 63 Mass. App. Ct. 327, 332 (2005), using "objective, well-established concepts of trust and property law," Fortin, supra at 788. As such, there was no error in the judge's decision to apply the neutral principles of law approach and exercise jurisdiction.

The defendants' affirmative defenses could not change this result. While the defendants assert that they are not trespassers because they are equitable owners of the church under canon law and that they have a right of entry under Canon 1214,[7] "[w]e may not . . . examine the actual status or disposition of church property under canon law, or . . . attempt to interpret any particular provision of canon law."[8] Maffei, 449 Mass. at 244. Any civil claim to equitable ownership of the

---

[7] The defendants state that Canon 1214 provides as follows: "[b]y term church is understood a sacred building designated for divine worship to which the faithful have the right of entry for the exercise, especially the public exercise, of divine worship." The quoted language apparently derives from an affidavit filed in the case of Roman Catholic Archbishop of Springfield vs. Anop, Sup. Ct., No. 2011-831 (Feb. 3, 2012) (Moriarty, J.) (Anop). No affidavit was filed in this action regarding Canon 1214, but the judge addressed the issue because it was discussed in Anop, supra. We decline to address the issue other than to note that Anop is distinguishable on its facts.

[8] For this reason, there was no error in the judge's declining to consider the defendants' evidence of canon law.

church was barred for lack of standing, see id. at 245; Rogers I, 72 Mass. App. Ct. 1117,[9] and there was no error in denying the defendants' motion to dismiss.[10]

2. Trespass claim. The defendants next maintain that the judge's findings of fact on the trespass claim are clearly erroneous and must be set aside. The judge found that the RCAB is the owner of the property that includes the church, that it has actual possession of the church, and that the "defendants are intentionally entering and staying on RCAB's property without permission, justification or excuse."

"[W]e accept the judge's findings of fact as true unless they are clearly erroneous," Kendall v. Selvaggio, 413 Mass. 619, 620 (1992), giving "due regard . . . to the opportunity of the trial court to judge of the credibility of the witnesses," Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). While we "do not review questions of fact if any reasonable view of the evidence and the rational inferences to be drawn therefrom support the judge's findings," we review de novo the judge's conclusions of law. Martin v. Simmons Properties, LLC, 467 Mass. 1, 8 (2014).

---

[9] Thus, we need not address the defendants' claim that the judge improperly applied res judicata to preclude evidence of their equitable ownership defense.

[10] We note, as did the trial judge, that the defendants previously invoked the court's jurisdiction when they brought suit against the RCAB in 2005.

We see no error in the judge's factual findings, all of which are supported by the record. Experts for the RCAB as well as the defendants opined that the RCAB holds title to the properties at issue,[11] and it is well settled that possession under claim of title constitutes legal seisin. Perry v. Weeks, 137 Mass. 584, 590 (1884). "There was ample evidence that at the time of the trespasses the [RCAB] had not only the possession that constructively followed the title . . . but actual possession," Stone v. New England Box Co., 216 Mass. 8, 11 (1913), including testimony that, from 2004 to present, RCAB representatives have visited the property, hired landscapers and snow removers, paid real estate taxes, utility, and alarm system bills, and overseen and paid for other miscellaneous repairs and expenses. Four defendants testified that they remained at the church despite repeatedly being asked by the RCAB to "move on," and there was no dispute that the defendants remained on the property after receiving the RCAB's formal notice to vacate. For reasons discussed infra, the judge properly declined to consider whether Canon 1214 gave the defendants a right of

---

[11] While the defendants purported to challenge the RCAB's ownership of the church, they did not offer any evidence at trial that would support an inference that the RCAB does not own the property.

entry, and we see no error in his conclusion that the RCAB's claim was not barred by the doctrine of laches.[12]

The judge's factual findings support his legal conclusion that the defendants are trespassers. See Restatement (Second) of Torts § 158 (1965) ("One is subject to liability to another for trespass . . . if he intentionally [a] enters land in the possession of the other . . . or [b] remains on the land . . ."). The judge's ultimate conclusion that the defendants have remained on RCAB property without justification or excuse is "based on reasonable inferences from the evidence and [is] consistent with the findings," and there was no error. Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 510 (1997).

3. Remaining claims. The judge properly denied the defendants' demands for a jury trial. The RCAB sought declaratory and injunctive relief, and it is well settled that "[t]here is no constitutional right to a jury trial when the cause of action arises in equity." Id. at 526. While the counterclaim sought a remedy at law in the form of damages, see Rosati v. Boston Pipe Covering, Inc., 434 Mass. 349, 352 (2001), and the RCAB's choice to proceed in equity "ought not to deprive

---

[12] Although the RCAB agreed to allow the defendants to remain in the church until their canonical appeals were exhausted, it is without question that by February 3, 2015, the defendants knew that they lacked the RCAB's consent to remain on the property.

[the defendants] of [their] right of trial by jury," Merchants' Natl. Bank of Newburyport v. Moulton, 143 Mass. 543, 545 (1887), the judge aptly noted that the allegations set forth in the counterclaim failed to state a claim upon which relief can be granted.  See Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974). Accordingly, the defendants were not entitled to a jury trial on the counterclaim.

Nor did the judge err in denying the defendants' emergency motion to continue the trial date.  The defendants had ample opportunity to contact the Attorney General and pursue their civil claim for equitable ownership of the church between September, 2008, when our decision in Rogers I issued, and April 3, 2015, when the judge in this case heard argument on the emergency motion to continue.[13]  Further discovery was not required in light of the narrow issue to be decided at trial, and there was no need to depose Cardinal O'Malley on the issue of laches because the RCAB acknowledged that the defendants had been occupying the church without its consent for eleven years before it took legal action.  Testimony on this point would have been cumulative and answers to the defendants' proposed

---

[13] In Rogers I, 72 Mass. App. Ct. 1117, the panel, citing G. L. c. 12, § 8,  noted that it was the Attorney General, and not the defendants, who had standing to maintain an action alleging mismanagement of charitable funds held in trust under G. L. c. 67, §§ 44-46.

questions largely irrelevant, so there was no abuse of discretion. See <u>Hanover Ins. Co</u>. v. <u>Sutton</u>, 46 Mass. App. Ct. 153, 159 (1999) ("The scheduling of trial and the conduct and scope of discovery . . . are issues within the sound discretion of the motion or trial judge").

The defendants make no argument regarding the portion of the judgment permanently enjoining them or anyone associated with them from trespassing at the church, and we see no abuse of discretion in the judge ordering such relief. See <u>LightLab Imaging, Inc</u>. v. <u>Axsun Technologies, Inc</u>., 469 Mass. 181, 194 (2014) ("Trial judges have broad discretion to grant or deny injunctive relief, . . . and we review a judge's decision for an abuse of that discretion"). While we acknowledge the defendants' heartfelt beliefs that they are entitled to remain on the premises as an exercise of their freedom of religion, the judge's conclusion that the defendants are trespassers is supported by the evidence, and "a landowner is entitled to be protected by injunction against continuing trespasses of a physical and tangible nature." <u>Fortier</u> v. <u>H. P. Hood & Sons</u>, 307 Mass. 292, 297 (1940).

<u>Judgment affirmed</u>.